IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

───────────────────────

THE STATE OF ARIZONA,
*Respondent*,

*v.*

GREGORY NIDEZ VALENCIA JR.,
*Petitioner*.

───────────────────────

THE STATE OF ARIZONA,
*Respondent*,

*v.*

JOEY LEE HEALER,
*Petitioner*.

───────────────────────

No. 2 CA-CR 2015-0151-PR
No. 2 CA-CR 2015-0182-PR
(Consolidated)
Filed March 28, 2016

───────────────────────

Petitions for Review from the Superior Court in Pima County
Nos. CR051447 and CR48232
The Honorable Catherine M. Woods, Judge
The Honorable James E. Marner, Judge

**REVIEW GRANTED; RELIEF GRANTED**

COUNSEL

Barbara LaWall, Pima County Attorney
By Jacob R. Lines, Deputy County Attorney, Tucson
*Counsel for Respondent*

Dean Brault, Pima County Legal Defender
By Alex Heveri, Assistant Legal Defender, Tucson
*Counsel for Petitioner Gregory Nidez Valencia Jr.*

Steven R. Sonenberg, Pima County Public Defender
By David J. Euchner and Katherine A. Estavillo, Assistant Public Defenders, Tucson
*Counsel for Petitioner Joey Lee Healer*

**OPINION**

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Miller and Chief Judge Eckerstrom concurred.

E S P I N O S A, Judge:

**¶1**        Gregory Valencia Jr. and Joey Healer seek review of trial court orders denying their respective petitions for post-conviction relief, in which they argued *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455 (2012), constitutes a significant change in the law applicable to their natural-life prison sentences. Because *Miller*, as clarified by the United States Supreme Court in *Montgomery v. Louisiana*, ___ U.S. ___, ___, 136 S. Ct. 718, 734 (2016), "bar[s] life without parole" for all juvenile offenders except those "whose crimes reflect permanent incorrigibility," we accept review and grant relief.

**Procedural Background**

**¶2**        Valencia and Healer were each convicted of first-degree murder in addition to other offenses and were sentenced to natural

life in prison. Both were juveniles at the time of their offenses. Although we vacated one of Valencia's non-homicide convictions on appeal, we affirmed his remaining convictions and sentences. *State v. Valencia*, No. 2 CA-CR 96-0652 (memorandum decision filed Apr. 30, 1998). We affirmed Healer's convictions and sentences on appeal. *State v. Healer*, No. 2 CA-CR 95-0683 (memorandum decision filed Dec. 24, 1996).

¶3 In 2013, Valencia filed two notices of post-conviction relief, along with a supplement, raising various claims, including that *Miller* constituted a significant change in the law pursuant to Rule 32.1(g), Ariz. R. Crim. P. The trial court, treating Valencia's second notice as a petition for post-conviction relief, summarily denied relief. On review, we granted partial relief, determining Valencia had not been given an adequate opportunity to raise his claim based on *Miller* because the court had erred in construing his second notice as his petition for post-conviction relief. We thus remanded the case to the trial court for further proceedings related to that claim, but otherwise denied relief. *State v. Valencia*, No. 2 CA-CR 2013-0450-PR (memorandum decision filed May 6, 2014).

¶4 Healer also sought post-conviction relief in 2013, seeking to raise a claim pursuant to *Miller* and requesting that counsel be appointed. The trial court, however, summarily dismissed his notice, concluding *Miller* did not apply. We granted relief, determining Healer was entitled to counsel and to file a petition for post-conviction relief and remanding the case to the trial court for further proceedings. *State v. Healer*, No. 2 CA-CR 2013-0372-PR (memorandum decision filed Jan. 28, 2014).

¶5 Valencia and Healer then filed separate petitions in which they raised the same argument—that *Miller* constituted a significant change in the law applicable to their respective natural-life sentences. They contended that under *Miller*, Arizona's sentencing scheme is unconstitutional because a life sentence was essentially a sentence of life without a meaningful opportunity for release due to the abolition of parole. Each further argued our sentencing scheme is unconstitutional because "it completely fails to take any account of the attendant characteristics of youth." Last, both argued "the process by which [they] w[ere] sentenced was

unconstitutional" because the court "failed to give proper weight to youth and its attendant characteristics."

¶6        The trial court in each proceeding summarily denied relief.  The court in Valencia's proceeding noted that, "at the time of sentencing" the court believed "that it had the discretion to impose natural life or, alternatively, life with the opportunity for parole after 25 years."   It further observed that Valencia had been given individualized sentencing consideration as required by *Miller* and that, after that consideration, the court found his youth to be a mitigating factor but, in consideration of other factors, had nonetheless determined a natural-life sentence was appropriate.

¶7        The trial court in Healer's proceeding determined that any constitutional infirmity in Arizona's sentencing scheme had been resolved by recent statutory changes reinstating parole for juvenile offenders given a life sentence with an opportunity for release.   The court further determined that, in any event, the sentencing court had found Healer's age to be a mitigating factor and had imposed a natural-life sentence in compliance with *Miller*. Healer and Valencia each filed petitions for review, which we consolidated at their request.

## Discussion

¶8        In their petitions for review, Healer and Valencia repeat their argument that *Miller* is a significant change in the law entitling them to be resentenced.  *See* Ariz. R. Crim. P. 32.1(g).  In *Miller*, the United States Supreme Court determined that a sentencing scheme "that mandates life in prison without possibility of parole for juvenile offenders" violated the Eighth Amendment's prohibition against cruel and unusual punishment.  ___ U.S. at ___, 132 S. Ct. at 2469; *see also State v. Vera*, 235 Ariz. 571, ¶ 3, 334 P.3d 754, 755-56 (App. 2014).   The Court further stated that, before a juvenile offender is sentenced to natural life, courts must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."  *Miller*, ___ U.S. at ___, 132 S. Ct. at 2469.

**¶9**        While Healer's and Valencia's petitions were pending, the Supreme Court accepted review of another case involving juveniles sentenced to life imprisonment without the possibility of parole in order to determine whether *Miller* should be applied retroactively. *Montgomery v. Louisiana*, ___ U.S. ___, 135 S. Ct. 1546 (2015) (granting writ of certiorari); *see also Montgomery*, ___ U.S. at ___, 136 S. Ct. at 727. We stayed the current proceeding and ordered the parties to provide supplemental briefs when that decision issued.

**¶10**        The Supreme Court decided *Montgomery* in January 2016. It explained that, in *Miller*, it had determined a natural-life sentence imposed on a juvenile offender "violates the Eighth Amendment for a child whose crime reflects 'unfortunate yet transient immaturity.'" *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 734, *quoting Miller*, ___ U.S. at ____, 132 S. Ct at 2469. Thus, the Court clarified, the Eighth Amendment requires more than mere consideration of "a child's age before sentencing him or her to a lifetime in prison," but instead permits a natural-life sentence only for "the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Id.* The Court further determined that the rule announced in *Miller* was a substantive constitutional rule that was retroactively applicable pursuant to *Teague v. Lane*, 489 U.S. 288 (1989). *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 735-36.

**¶11**        Valencia and Healer argue on review that, pursuant to *Miller*, Arizona's sentencing scheme for juveniles convicted of first-degree murder is unconstitutional because it permits the imposition of a natural-life term without requiring the court to "take any account of the attendant characteristics of youth." They also assert their respective sentencing courts did not sufficiently consider those characteristics in imposing natural-life sentences.[1] To be entitled to

---

[1]Valencia and Healer additionally maintain that, pursuant to *Miller*, the mandatory minimum sentence of twenty-five years to life for murder is unconstitutional for juvenile offenders. But the Supreme Court in *Miller* did not address mandatory minimum sentences for juveniles; its discussion was limited to natural-life

relief pursuant to Rule 32.1(g), Valencia and Healer must show there "has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence."

¶12            As the state concedes, the Supreme Court settled in *Montgomery* the question whether the rule announced in *Miller* applies retroactively.  Thus, the question before us is whether that rule constitutes a significant change in Arizona law.  A significant change in the law is a "transformative event, a 'clear break from the past.'"  *State v. Werderman*, 237 Ariz. 342, ¶ 5, 350 P.3d 846, 847 (App. 2015), *quoting State v. Shrum*, 220 Ariz. 115, ¶ 15, 203 P.3d 1175, 1178 (2009).  "Such change occurs, for example, 'when an appellate court overrules previously binding case law' or when there has been a 'statutory or constitutional amendment representing a definite break from prior law.'"  *Id.*, *quoting Shrum*, 220 Ariz. 115, ¶¶ 16-17, 203 P.3d at 1178-79.

¶13            At the time of Valencia's and Healer's offenses, Arizona's sentencing scheme required the court to consider their age in determining which sentence to impose.  *See former* A.R.S. § 13-703(G)(5); 1988 Ariz. Sess. Laws, ch. 155, § 1; *see also* A.R.S. § 13-702(E)(1); 1984 Ariz. Sess. Laws, ch. 43, § 1.  And courts have long understood that the sentencing considerations for juveniles are markedly different from those for adults, noting in particular a sentencing court should consider a juvenile defendant's age as well as his or her "level of maturity, judgment and involvement in the crime."  *State v. Greenway*, 170 Ariz. 155, 170, 823 P.2d 22, 37 (1991); *see also Thompson v. Oklahoma*, 487 U.S. 815, 823-24, 833-34 (1988).

¶14            But the mere requirement that a sentencing court consider a juvenile defendant's youth before imposing a natural-life sentence does not comply with the Supreme Court's recent directive forbidding a natural-life sentence "for all but the rarest of juvenile offenders."  *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 734.  Instead, as the Court explained, the sentencing court must determine whether

sentences.  *See* ___ U.S. at ___, 132 S. Ct. at 2469.  Accordingly, we reject this argument.

the juvenile defendant's "crimes reflect [] transient immaturity," or whether the defendant's crimes instead "reflect permanent incorrigibility." *Id.* Only in the latter case may the sentencing court impose a sentence of natural life. *See id.*

¶15 In its supplemental brief following the Court's decision in *Montgomery*, the state maintains that *Miller* is nonetheless inapplicable to Valencia and Healer because their natural-life terms were not mandatory. We agree that the core issue presented in *Miller* concerned the mandatory imposition of a natural-life sentence. But there is no question that the rule in *Miller* as broadened in *Montgomery* renders a natural-life sentence constitutionally impermissible, notwithstanding the sentencing court's discretion to impose a lesser term, unless the court "take[s] into account 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 733, *quoting Miller*, ___ U.S. at ___, 132 S. Ct. at 2469. Moreover, after taking these factors into account, the court can impose a natural-life sentence only if it concludes that the juvenile defendant's crimes reflect permanent incorrigibility.[2] *See id.* at ___, 136 S. Ct. at 734.

¶16 The state also contends that, in any event, Valencia's and Healer's respective sentencing courts "took [their] ages into account" in imposing that term. As we have explained, however, the Eighth Amendment, as interpreted in *Montgomery*, requires more than mere consideration of age before imposing a natural-life sentence. *See id.* at ___, 136 S. Ct. at 734-35. The state does not argue that the facts presented at Valencia's and Healer's respective sentencing hearings would require, or even support, a finding that

_____

[2] Justice Scalia, in his dissent, asserts that the majority's reasoning can be read as a "way of eliminating life without parole for juvenile offenders." *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 744 (Scalia, J., dissenting) (joined by Justice Thomas and Justice Alito). Although the majority states "it will be the rare juvenile offender who can receive [a natural-life] sentence," we do not view that pronouncement an absolute bar against such a sentence. *Id.* at ___, 136 S. Ct. at 734.

their crimes reflect permanent incorrigibility.  In any event, in light of the heretofore unknown constitutional standard announced in *Montgomery*, the parties should be given the opportunity to present evidence relevant to that standard.  *See, e.g., State v. Steelman*, 120 Ariz. 301, 320, 585 P.2d 1213, 1232 (1978) (remanding for redetermination of sentence in light of recent case law).

**Conclusion**

**¶17**        The Supreme Court's determination in *Montgomery* that a natural-life sentence imposed on a juvenile defendant is unconstitutional unless the juvenile's offenses reflect permanent incorrigibility constitutes a significant change in Arizona law that is retroactively applicable.[3]  *See* Ariz. R. Crim. P. 32.1(g); *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 735-36.  Valencia and Healer are therefore entitled to be resentenced.  Accordingly, we accept review and grant relief, and this case is remanded to the trial court for further proceedings consistent with this decision.

---

[3]We need not address Valencia and Healer's argument that the sentencing scheme in place at the time of their sentences was unconstitutional.  And we decline to address pending legislation that may affect the issues presented in this case.