CHIEF JUSTICE BALES,
opinion of the Court:
¶ 1 We here consider whether the trial court erred by summarily denying petitions for post-conviction relief alleging that petitioners’ natural life sentences for homicides committed as juveniles are unconstitutional in light of Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). Because the United States Supreme Court held in Montgomery v. Louisiana, — U.S. —, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), that Miller applies retroactively and “sentencing a child to life without parole is excessive for all but ‘the rare juvenile offender whose crime reflects irreparable corruption,’ ” id. at 734 (quoting Miller, 132 S.Ct. at 2469), we reverse the trial court’s rulings and remand for further proceedings to determine if petitioners are entitled to relief.
I.
¶ 2 Joey Lee Healer, when sixteen years old in 1994, borrowed a sawed-off rifle intending to use it to obtain money and a vehicle. He went to the home of seventy-four-year-old Chester Iserman, who had occasionally hired Healer to do odd jobs and trusted him with free access to his home. Healer fatally shot Iserman and took his truck.
¶ 3 Gregory Nidez Valencia Jr., when seventeen years old in 1995, along with a sixteen-year-old accomplice, stole a bicycle from an enclosed patio in a condominium complex. When they attempted to enter the patio of another condominium, they were confronted by its owner, Fred George. After a brief exchange, Valencia fatally shot George.
¶ 4 Healer and Valencia were each convicted of first degree murder. At sentencing, the trial court in each case considered various aggravating and mitigating factors, including the defendant’s age. In 1995, Healer was sentenced to natural life imprisonment under A.R.S. § 13-703 (Supp. 1995), meaning he is not eligible for release; Valencia received the same sentence in 1996. After the United States Supreme Court’s 2012 decision in Miller, they each petitioned for post-conviction relief under Arizona Rule of Criminal Procedure 32.1(g), contending that Miller was a “significant change in the law that if determined to apply ... would probably overturn” their sentences. They also argued that, in light of Miller, the Arizona sentencing *208 scheme in place when they were sentenced was unconstitutional.
¶ 5 The trial court summarily denied relief in each case. With regard to Healer, the trial court concluded that the sentencing court had complied with Miller because it had considered Healer’s age as a mitigating factor before imposing a natural life sentence. The trial court also observed that any constitutional infirmity in Arizona’s sentencing scheme had been resolved by 2014 statutory amendments that reinstated parole for juvenile offenders who received life sentences with the opportunity of release. See A.R.S. §§ 13-716, 41-1604.09; 2014 Ariz. Sess. Laws, ch. 166, §§ 2, 3; see also State v. Vera, 235 Ariz. 571, 576 ¶ 18, 334 P.3d 754, 759 (App. 2014).
¶ 6 In Valencia’s case, the trial court concluded that the natural life sentence did not violate Miller because that sentence was not mandatory, but instead was imposed after the sentencing court had considered Valencia’s age and other mitigating factors. The trial court, as in Healer’s case, also ruled that the 2014 amendments remedied any constitutional infirmity in the previous sentencing scheme.
¶ 7 Healer and Valencia filed petitions for review with the court of appeals, which consolidated the cases, accepted review, and granted relief. State v. Valencia, 239 Ariz. 255, 256 ¶ 1, 257 ¶ 7, 370 P.3d 124, 125, 126 (App. 2016). The court of appeals ruled that Miller, as broadened by Montgomery, is a significant change in the law for purposes of Rule 32.1(g) that entitles Healer and Valencia to be resentenced. Id. at 258 ¶¶ 12, 15-16, 370 P.3d at 127. In light of this ruling, the court of appeals declined to address their arguments that the sentencing scheme in place when they were sentenced was unconstitutional. Id. at 259 ¶ 17 n.3, 370 P.3d at 128.
¶ 8 We granted review to consider whether Miller is a significant change in the law that may require the resentencing of persons serving natural life sentences for crimes committed as juveniles, a legal issue of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.
II.
¶ 9 A defendant is entitled to post-conviction relief when “[t]here has been a significant change in the law that if determined to apply to defendant’s case would probably overturn the defendant’s conviction or sentence!)]” Ariz. R. Crim. P. 32.1(g). A “significant change in the law” is “a clear break from the past.” State v. Shrum, 220 Ariz. 115, 118 ¶ 15, 203 P.3d 1175, 1178 (2009). Thus, to determine if Miller constitutes such a change, we must consider both that decision and the law that existed when Healer and Valencia were sentenced more than a decade earlier.
¶ 10 When Healer and Valencia were sentenced, A.R.S. § 13-703 provided two sentencing options for juveniles convicted of first-degree murder: (1) natural life; and (2) life without eligibility for release “until the completion of the service of twenty-five calendar years if the victim was fifteen or more years of age and thirty-five if the victim was under fifteen years of age.” § 13-703(A) (Supp. 1995). The statute also required a hearing to determine the existence of any aggravating and mitigating circumstances. § 13-708(A)-(H). Among the five mitigating circumstances the sentencing court had to consider was “the defendant’s age.” § 13-703(G)(5). Here, the sentencing court considered the ages of Healer and Valencia before imposing natural life sentences.
¶ 11 The natural life sentences at issue thus were not mandatory but did amount to sentences of life without the possibility of parole. This is because in 1993 Arizona eliminated parole for all offenders, including juveniles, who committed offenses after January 1, 1994, and replaced it with a system of “earned release credits,” which can reduce the time that must be served in prison. See 1993 Ariz. Sess. Laws, ch. 255, § 86; see also A.R.S. § 41-1604.09(1). The system of earned release credits, however, did not by its terms apply to natural life sentences. See Vera, 235 Ariz. at 575-76 ¶ 17, 334 P.3d at 758-59.
¶ 12 In Miller, the Supreme Court ruled that the Eighth Amendment prohibits the imposition of mandatory life-without-parole *209 sentences for juveniles. 132 S.Ct. at 2469. The Court observed that “youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole,” id at 2465, and that mandatory life-without-parole sentences impermissibly “preclude a sentencer from taking account of an offender’s age and the wealth of characteristics and circumstances attendant to it.” Id. at 2467. The Court further noted that “appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon,” id. at 2469, suggesting that such sentences can only be imposed on the “rare juvenile offender whose crime reflects irreparable corruption” as distinct from “transient immaturity.” Id (quoting Roper v. Simmons, 543 U.S. 551, 573, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)).
¶ 13 Miller did not expressly resolve whether its holding was procedural—that is, whether it barred only mandatory sentences of life-without-parole for juveniles—or instead substantive in restricting the class of juveniles eligible for “this harshest possible penalty.” Id. The decision also did not resolve whether it was retroactive. In the aftermath of Miller, courts reached conflicting decisions on these issues. Compare, e.g,, People v. Davis, 379 Ill.Dec. 381, 6 N.E.3d 709, 722 (2014) (holding that Miller announced a new substantive rule that applies retroactively), with, e.g., State v. Tate, 130 So.3d 829, 841 (La. 2013) (holding that Miller announced a new procedural rule that does not apply retroactively).
¶ 14 Montgomery resolved this conflict by clarifying that Miller is a new substantive rule of constitutional law that must be given retroactive effect by state courts. 136 S.Ct. at 729, 732. Miller, as interpreted by the majority in Montgomery, did not adopt merely a procedural rule requiring individualized sentencing (as distinct from mandatory sentences of life without parole), but instead recognized that “sentencing a child to life without parole is excessive for all but ‘the rare juvenile offender whose crime reflects irreparable corruption.’ ” Id. at 734 (quoting Miller, 132 S.Ct. at 2469). Miller reflects a “substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity.” Id. at 735. This conclusion prompted a vigorous dissent, which argued that the majority had effectively rewritten Miller to require states to eliminate life-without-parole sentences for juveniles. Id. at 737, 743-44 (Scalia, J., joined by Thomas & Alito, JJ., dissenting).
¶ 15 Miller, as clarified by Montgomery, represents a “clear break from the past” for purposes of Rule 32.1(g). Arizona law, when Healer and Valencia were sentenced, allowed a trial court to impose a natural life sentence on a juvenile convicted of first degree murder without distinguishing crimes that reflected “irreparable corruption” rather than the “transient immaturity of youth.” Because Miller reflects a new substantive rule of constitutional law, we are required by Montgomery to give this rule retroactive effect.
¶ 16 Notwithstanding Montgomery, the State argues that Miller does not constitute a significant change in the law for purposes of Rule 32.1(g). The State contends that Miller bars mandatory sentences of life without parole and thus requires only that the sentencing court consider the juvenile’s age as a mitigating factor before imposing a natural life sentence—as occurred in each case here. Montgomery refutes these arguments by expressly holding that Miller reflects a substantive rule and noting “[e]ven if a court considers a child’s age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity.” Id. at 734 (internal quotation marks omitted); see also Tatum v. Arizona, — U.S. —, 137 S.Ct. 11, 12, 196 L.Ed.2d 284 (2016) (summarily granting review, vacating, and remanding for reconsideration, in light of Montgomery, several decisions by the Arizona Court of Appeals rejecting claims for post-conviction relief under Miller where sentencing court had considered the petitioner’s youth).
¶ 17 In order to be entitled to resen-tencing, Healer and Valencia must also establish that Miller “if determined to apply ... would probably overturn” their sentences, Ariz. R. Crim. P. 32.1(g). But the retroactivity of Miller and the failure of the *210 sentencing courts to expressly determine whether the juvenile defendants’ crimes reflected “irreparable corruption” do not in themselves entitle Valencia and Healer to post-conviction relief. Montgomery noted that “Miller did not require trial courts to make a finding of fact regarding a child’s incorrigibility,” but instead held that imposing a sentence of life without parole on “a child whose crime reflects transient immaturity” violates the Eighth Amendment. 136 S.Ct. at 736.
¶ 18 Healer and Valencia are entitled to evidentiary hearings on their Rule 32.1(g) petitions because they have made colorable claims for relief based on Miller. See Ariz. R. Crim. P. 32.8(a) (“The defendant shall be entitled to a hearing to determine issues of material fact[.]”); State v. Amaral, 239 Ariz. 217, 220 ¶¶ 11-12, 368 P.3d 925, 928 (2016) (discussing when an evidentiary hearing is required). At these hearings, they will have an opportunity to establish, by a preponderance of the evidence, that their crimes did not reflect irreparable corruption but instead transient immaturity. See Ariz. R. Crim. P. 32.8(c). Only if they meet this burden will they establish that them natural life sentences are unconstitutional, thus entitling them to resentencing. Cf. Montgomery, 136 S.Ct. at 736-37 (noting “prisoners like Montgomery must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored”). If the State does not contest that the crime reflected transient immaturity, it should stipulate to the defendant’s resentencing in light of Montgomery and Miller.
¶ 19 The need for such evidentiary and resentencing hearings could be obviated, as Montgomery recognized, “by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them.” Id. at 736. While this result could be achieved by the legislature amending A.R.S. § 13-716 to apply to inmates serving natural life sentences for murders committed as juveniles, it is not a change that can be mandated by judicial decision.
III.
¶ 20 We vacate the opinion of the court of appeals, reverse the trial court’s rulings dismissing the petitions for post-conviction relief, and remand the cases to the trial court for further proceedings to determine if petitioners are entitled to relief.