IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STATE OF ARIZONA**,
*Plaintiff/Respondent*,

*v.*

**JOHN MONTENEGRO CRUZ**,
*Defendant/Petitioner*.

No. CR-17-0567-PC
**June 4, 2021**

Appeal from the Superior Court in Pima County
The Honorable Joan L. Wagener, Judge
No. CR2003-1740
**AFFIRMED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Brunn (Beau) W. Roysden III, Solicitor General, Lacey Stover Gard, Chief Counsel, Jeffrey L. Sparks (argued), Assistant Attorney General, Capital Litigation Section, Phoenix, Attorneys for State of Arizona

Jon M. Sands, Federal Public Defender, Cary Sandman (argued), Assistant Federal Public Defender, Tucson, Attorneys for John Montenegro Cruz

John R. Mills, Phillips Black, Inc., Oakland, CA, Attorney for Amicus Curiae Phillips Black, Inc.

JUSTICE MONTGOMERY authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, and BEENE joined.[*]

JUSTICE MONTGOMERY, opinion of the Court:

**¶1**        A defendant is generally precluded from seeking collateral review of a matter he could have raised during his direct appeal.  Ariz. R. Crim. P. 32.2.  One exception is when there is a significant change in the law which, if applicable to his case, would probably overturn his judgment or sentence.  Ariz. R. Crim. P. 32.1(g).  In this matter, we determine whether *Lynch v. Arizona* (*Lynch II*), 136 S. Ct. 1818 (2016), which held that this Court misapplied *Simmons v. South Carolina*, 512 U.S. 154 (1994), was such a significant change in the law.

**¶2**        We hold that, because *Lynch II* was based on precedent well established at the time the defendant was convicted and sentenced, it was not a significant change in the law for purposes of permitting relief pursuant to Rule 32.1(g).

## I. Factual and Procedural Background

**¶3**        In 2005, a jury convicted John Montenegro Cruz of first degree murder for the 2003 killing of Tucson Police Officer Patrick Hardesty and returned a verdict imposing a sentence of death.  At the time of the murder, Officer Hardesty had contacted Cruz at an apartment complex and was trying to determine his identity as part of a hit-and-run investigation.  Cruz said his identification was in his car, and Officer Hardesty took him to get it.  At first, Cruz pretended to reach inside his car but then took off running.  Officer Hardesty chased him while a second officer followed in his patrol car.

---

[*] Although Justice Andrew W. Gould (ret.) participated in the oral argument in this case, he retired before issuance of this opinion and did not take part in its drafting.

¶4         When the second officer caught up to Cruz, he saw Cruz throw a gun to the ground. Officer Hardesty's body was nearby. He had been shot five times. The handgun thrown by Cruz was a .38 caliber Taurus revolver with five expended cartridges. Forensic examiners concluded that the five bullets recovered from Officer Hardesty's body were from the same Taurus revolver, and these matched five unfired .38 cartridges that Cruz possessed at the time of his arrest.

¶5         This Court affirmed Cruz's conviction and sentence, *State v. Cruz*, 218 Ariz. 149, 171 ¶ 139 (2008), and the United States Supreme Court denied his petition for writ of certiorari, *Cruz v. Arizona*, 555 U.S. 1104 (2009). Cruz filed his first petition for post-conviction relief ("PCR") in 2012, which the PCR court dismissed, and this Court denied review. In 2014, Cruz initiated federal habeas proceedings that are ongoing.

¶6         After the Supreme Court's decision in *Lynch II*, Cruz filed his present PCR petition. The PCR court denied it, finding that *Lynch II* did not represent a significant change in the law permitting relief. Nonetheless, the court concluded that even if *Lynch II* was a significant change in the law, it did not apply retroactively nor would it have probably changed Cruz's sentence.

¶7         We granted review to determine whether the Supreme Court's ruling in *Lynch II* amounted to a significant change in the law and, if so, whether that change applies retroactively and would probably overturn Cruz's sentence. Whether *Lynch II* is a significant change in the law is a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 13-4239.

## II. *Simmons* and Arizona Cases

¶8         We summarized *Simmons* in Cruz's direct appeal:

> In *Simmons*, a defendant charged with capital murder was ineligible for parole because of his previous convictions for violent offenses. *Id.* at 156. Because the state argued that the death penalty was appropriate based on Simmons' propensity for future violence, Simmons asked the judge to inform the jury that a life sentence would mean life without

parole. *Id.* at 158. The trial court refused to do so, and Simmons was sentenced to death. *Id.* at 159–60. The United States Supreme Court reversed, stating that "where the defendant's future dangerousness is at issue, *and state law prohibits the defendant's release on parole*, due process requires that the sentencing jury be informed that the defendant is parole ineligible." *Id.* at 156; *see also Shafer v. South Carolina*, 532 U.S. 36 (2001) (affirming *Simmons*).

*Cruz*, 218 Ariz. at 160 ¶ 41 (emphasis added).

¶9 As there was "[n]o state law [that] would have prohibited Cruz's release on parole after serving twenty-five years, had he been given a life sentence," this Court concluded that Cruz's situation was distinguishable from that of the defendant in *Simmons*. *Id.* ¶ 42 (citing A.R.S. § 13-703(A), renumbered as A.R.S. § 13-751(A) by 2008 Ariz. Sess. Laws ch. 301, §§ 26, 38 (2d Reg. Sess.)).[1] Therefore, "[t]he jury was properly informed of the three possible sentences Cruz faced if convicted: death, natural life, and life with the possibility of parole after twenty-five years." *Id.*

¶10 This distinction served as the basis for denying similar requests for relief until the Supreme Court's holding in *Lynch II*. *See State v. Garcia*, 224 Ariz. 1, 18 ¶ 77 (2010) ("[T]he trial court was not required to give an instruction on parole eligibility because, irrespective of any likelihood that he would die in prison, Garcia was not technically ineligible for parole."); *State v. Hargrave*, 225 Ariz. 1, 14–15 ¶ 53 (2010) ("Unlike Simmons, Hargrave was eligible for release after twenty-five years, as the jury instruction correctly stated."); *State v. Chappell*, 225 Ariz. 229, 240 ¶ 43 (2010) (finding that jury instruction "accurately described the statutory sentencing options" and thus did not mislead the jury (citing § 13-751(A))); *State v. Hardy*, 230 Ariz. 281, 293 ¶ 58 (2012) (finding that "[n]o *Simmons* instruction was required" because "the possibility of a life sentence with release after twenty-five years" was "accurately stated" in the jury instruction); *State v. Boyston*, 231 Ariz. 539, 552–53 ¶ 68 (2013) (finding no

---

[1] This provision was further amended by 2012 Ariz. Sess. Laws ch. 207, § 2 (2d Reg. Sess.) to eliminate the possibility of release on any basis, leaving natural life or death as the only sentencing options.

due process violation where court declined to instruct the jury that Arizona law precluded defendant from being considered for parole after serving twenty-five years if sentenced to life in prison); *State v. Lynch* (*Lynch I*), 238 Ariz. 84, 103 ¶ 65 (2015), *rev'd Lynch II* (stating that "*Simmons* applies only to instances where, as a legal matter, there is *no possibility* of parole if the jury decides the appropriate sentence is life in prison" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 169 (2000) (emphasis added))).

**¶11**　　　　　Referring to its opinions in *Ramdass*, *Shafer*, and *Kelly v. South Carolina*, 534 U.S. 246 (2002), the Supreme Court in *Lynch II* rejected the distinctions this Court had drawn between the defendant in *Simmons* and similarly situated capital defendants in Arizona cases.　136 S. Ct. at 1819. The Supreme Court explicitly noted that *Simmons* "rejected the argument that the possibility of clemency diminishes a capital defendant's right to inform a jury of his parole ineligibility."　*Id.*　Likewise, the Supreme Court stated that its "precedents also foreclose[d] [the] argument" that a future legislature could provide for parole as a basis for not adhering to *Simmons*. *Id.* at 1820.

### III. *Lynch II* and Cruz's PCR

### A.

**¶12**　　　　　We review a court's ruling on a PCR petition for an abuse of discretion, which occurs if the court makes an error of law.　*State v. Pandeli*, 242 Ariz. 175, 180 ¶ 4 (2017)).　We review legal conclusions de novo.　*Id.*

**¶13**　　　　　A significant change in the law pursuant to Rule 32.1(g) "requires some transformative event, a clear break from the past."　*State v. Shrum*, 220 Ariz. 115, 118 ¶ 15 (2009) (quotation marks omitted) (quoting *State v. Slemmer*, 170 Ariz. 174, 182 (1991)).　To determine when a "clear break from the past" has occurred, "we must consider both that decision and the law that existed" at the time a criminal defendant was sentenced. *State v. Valencia*, 241 Ariz. 206, 208 ¶ 9 (2016).　"The archetype of such a change occurs when an appellate court overrules previously binding case law."　*Shrum*, 220 Ariz. at 118 ¶ 16.　Two such examples follow.

**¶14**　　　　　In 1990, the Supreme Court definitively stated in *Walton v. Arizona* that "[a]ny argument that the Constitution requires that a jury impose the sentence of death or make the findings prerequisite to

imposition of such a sentence has been soundly rejected by prior decisions of this Court." 497 U.S. 639, 647 (1990) *overruled by Ring v. Arizona*, 536 U.S. 584 (2002) (quoting *Clemons v. Mississippi*, 494 U.S. 738, 745 (1990)). For twelve years after, no defendant facing a capital sentence could argue otherwise. However, the Supreme Court expressly rejected *Walton* in *Ring*, concluding that the Sixth Amendment does indeed require a jury to find aggravating factors "necessary for imposition of the death penalty," and "overrule[d] *Walton* to the extent that it allow[ed] a sentencing judge, sitting without a jury," to make such findings. 536 U.S. at 609. "*Ring* was thus 'a significant change in the law' under Rule 32.1(g)." *Shrum*, 220 Ariz. at 119 ¶ 16.

**¶15** In *Valencia*, this Court considered the summary denial of PCR petitions raising constitutional challenges to natural life sentences for juveniles convicted of murder based on the holdings of *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190 (2016), *as revised* (Jan. 27, 2016). 241 Ariz. at 207 ¶ 1. At the time the defendants were sentenced for murders committed when they were juveniles, the legislature had abolished parole. *Id.* at 208 ¶ 11. The defendants were thus essentially sentenced to life without the possibility of parole. *Id.* However, in *Miller* the Supreme Court ruled "that the Eighth Amendment prohibits the imposition of mandatory life-without-parole sentences for juveniles." *Id.* at 208–09 ¶ 12. Because the law in place at the time the defendants were sentenced permitted what *Miller* later precluded, "*Miller*, as clarified by *Montgomery*, represents a 'clear break from the past' for purposes of Rule 32.1(g)." *Id.* at 209 ¶ 15.

**¶16** In stark contrast, *Lynch II* did not declare any change in the law representing a clear break from the past. As acknowledged in Cruz's petition to this Court, "[t]he Supreme Court's *Lynch* decision was dictated by its earlier decision in *Simmons v. South Carolina*, 512 U.S. 154 (1994)." And Cruz even cited *Simmons* in his direct appeal:

> Appellant argued below he was entitled to present to the jury the mitigating factor that there was no possibility he would ever be released from prison. *See Simmons v. South Carolina*, 512 U.S. 154, 114 S. Ct. 2187, 129 L. Ed. 2d 133 (1994) [due process requires the sentencing jury be instructed a capital defendant will not be eligible for parole].

**¶17**       Thus, the law relied upon by the Supreme Court in *Lynch II*—*Simmons*—was clearly established at the time of Cruz's trial, sentencing, and direct appeal, despite the misapplication of that law by Arizona courts. Consequently, *Lynch II* does not represent a significant change in the law for purposes of Rule 32.1(g). *Accord Andriano v. Shinn*, No. CV-16-01159-PHX-SRB, 2021 WL 184546, at *49 (D. Ariz. Jan. 19, 2021) ("*Lynch* does not represent a significant change in the law."); *Garza v. Ryan*, No. CV-14-01901-PHX-SRB, 2017 WL 105983, at *3 (D. Ariz. Jan. 11, 2017) (same); *Boggs v. Ryan*, No. CV-14-02165-PHX-GMS, 2017 WL 67522, at *3 (D. Ariz. Jan. 6, 2017) (same); *Garcia v. Ryan*, No. CV-15-00025-PHX-DGC, 2017 WL 1550419, at *3 (D. Ariz. May 1, 2017) (same).

**B.**

**¶18**       Cruz contends otherwise, arguing that *Lynch II* is nonetheless a transformative event for purposes of Rule 32.1(g) because it significantly changed how Arizona applied federal law, and points to *State v. Escalante-Orozco* and *State v. Rushing* as evidence of this Court recognizing as much. *Escalante-Orozco*, 241 Ariz. 254, 284–86 ¶¶ 117, 126–27 (2017), *abrogated on other grounds by State v. Escalante*, 245 Ariz. 135 (2018); *Rushing*, 243 Ariz. 212, 221–23 ¶¶ 37, 43 (2017). However, Rule 32.1(g) requires a significant change in the law, whether state or federal—not a significant change in the *application* of the law—and neither *Escalante-Orozco* nor *Rushing* support the conclusion Cruz draws.

**¶19**       *Escalante-Orozco* simply acknowledged that "[t]his Court has repeatedly held that even when a defendant's future dangerousness is at issue, the type of instruction given by the trial court here does not violate *Simmons* because future release is possible." 241 Ariz. at 284–85 ¶ 117. Regarding *Lynch II*, all *Escalante-Orozco* noted was that the Supreme Court had rejected the holding of *Lynch I*. *Id.* There was no Rule 32.1(g) analysis nor any characterization of the Supreme Court's decision as a change in the law. Almost the same is stated in *Rushing*: "In the past, this Court has held that even when a defendant's future dangerousness is at issue, the type of instruction given by the trial court here does not violate *Simmons* because future release is possible." 243 Ariz. at 221 ¶ 37. *Rushing* likewise noted *Lynch II*'s rejection of the holding in *Lynch I*:

> The [Supreme] Court determined that the possibilities of clemency or a future statute authorizing parole '[do not]

7

diminish[] a capital defendant's right to inform a jury of his parole ineligibility.'  And use of the word 'release,' while correct under Arizona law, still gives the defendant a right to inform the jury of his parole ineligibility.

*Id.* (quoting *Lynch II*, 136 S. Ct. at 1819).

¶20　　　　　Moreover, *State v. Shrum* rejected a similar argument.  220 Ariz. at 119–20 ¶¶ 19–20.  Shrum pled guilty to two amended counts of attempted sexual conduct with a minor under the age of twelve, each alleged to be a dangerous crime against a child ("DCAC"), which required imposition of a greater term of imprisonment than would otherwise have been permitted.  *Id.* at 116–17 ¶ 3.

¶21　　　　　In a successive PCR petition seeking relief pursuant to Rule 32.1(g), Shrum argued that *State v. Gonzalez*, 216 Ariz. 11 (App. 2007), was a "significant change in the law."  *Shrum*, 220 Ariz. at 117 ¶ 6.  In *Gonzalez*, the court of appeals held that A.R.S. § 13-604.01 did not allow a DCAC sentence enhancement for *attempted* sexual conduct with a child under the age of twelve.  216 Ariz. at 13 ¶ 8.

¶22　　　　　Shrum argued that the interpretation of § 13-604.01 by the court of appeals constituted a change because "up to that [] point [courts] had assumed" the statute's applicability to his crimes.  *Shrum*, 220 Ariz. at 119 ¶ 20.  As this Court explained, though, *Gonzalez* did not change any interpretation of Arizona constitutional law, the statute at issue did not change between the petitioner's crime and petition for relief, and no precedent was overruled, all of which meant "the law remained precisely the same."  *Id.* ¶ 19.  Likewise, the Supreme Court's decision in *Lynch II* did not change any interpretation of federal constitutional law, the holding of *Simmons* did not change between Cruz's crime and his first PCR petition, and no Supreme Court precedent was overruled or modified.

## IV. Conclusion

¶23　　　　　Because *Lynch II* is not a significant change in the law, Cruz is not entitled to relief under Rule 32.1(g).  Accordingly, we need not determine whether *Lynch II* applies retroactively to his case or would probably overturn his sentence.  We affirm the trial court's order denying post-conviction relief.