IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

CHARLES VINCENT WAGNER, JR., *Petitioner*.

No. 1 CA-CR 21-0492 PRPC
FILED 5-10-2022

Petition for Review from the Superior Court in Maricopa County
No. CR 1994-092394
The Honorable Rosa Mroz, Judge, *Deceased*

**REVIEW GRANTED; RELIEF GRANTED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Julie A. Done, Kristin L. Larish
*Counsel for Respondent*

Michael J. Dew Attorney at Law, Phoenix
By Michael J. Dew
*Counsel for Petitioner*

Arizona Justice Project, Phoenix,
By Karen Smith, Randal Boyd McDonald
*Counsel for Amicus Curiae Arizona Justice Project*

**OPINION**

Presiding Judge Maria Elena Cruz delivered the opinion of the Court, in which Judge Samuel A. Thumma and Judge Michael J. Brown joined.

**C R U Z**, Judge:

¶1        Charles Vincent Wagner, Jr. petitions this court for review from the summary dismissal of his petition for post-conviction relief filed under Arizona Rule of Criminal Procedure ("Rule") 32.  For the following reasons, we grant review and grant relief, to the extent that we remand for an evidentiary hearing as provided by *State v. Valencia*, 241 Ariz. 206 (2016).

## FACTUAL AND PROCEDURAL HISTORY

¶2        In June 1994, Wagner shot and killed a woman in a grocery store parking lot.  He was 16 years and two months old at the time.  The State prosecuted Wagner as an adult and sought the death penalty.  A jury found him guilty of first degree murder and attempted armed robbery.

¶3        As required by Arizona Revised Statutes ("A.R.S.") section 13-703(B) (1994),[1] the superior court held a hearing on aggravating and mitigating circumstances to determine Wagner's sentence for first degree murder.  Because parole had been abolished for those who committed felonies as of January 1, 1994, the superior court's sentencing options for the murder conviction were limited to death, life imprisonment with no release for the rest of Wagner's natural life, or life imprisonment with the possibility of release through executive clemency after Wagner served 25 years.  *See* A.R.S. §§ 13-703(A) (1994), 31-402 (1994), 41-1604.09(I) (1994); *Lynch v. Arizona*, 578 U.S. 613, 615 (2016).

¶4        The State relied on the trial record to prove aggravation.  To establish mitigation, the defense called witnesses who testified about Wagner's upbringing, psychological issues, and maturity level, both at the time of the shooting and since then.  The superior court found the State

---

[1]        Where appropriate, we cite the statutes in effect when Wagner committed the crimes.  *See State v. Newton*, 200 Ariz. 1, 2, ¶ 3 (2001); A.R.S. § 1-246.  Unless so indicated, we cite the current version of statutes and rules.

proved two statutory aggravators—that Wagner committed the murder for pecuniary gain and in an especially cruel manner. The court found Wagner proved the statutory mitigator of age and a non-statutory mitigating factor based on his difficult family history. The court ultimately determined "that the two mitigating factors [were] sufficiently substantial to call for life imprisonment instead of death despite the aggravating factors of pecuniary gain and cruelty."

¶5        The superior court sentenced Wagner to life imprisonment, "not to be released on any basis for the remainder of [his] natural life." The court explained that it was sentencing Wagner to "natural life, as opposed to a sentence of life imprisonment requiring a minimum of 25 years imprisonment prior to being eligible for release," based on his "use of a deadly weapon, the presence of accomplices, the especially cruel manner in which the offense was committed, the fact the crime was committed for pecuniary gain, the severe emotional harm caused to the victim's immediate family and the danger to the community that [Wagner] presents." The court sentenced Wagner to a consecutive prison term of 7.5 years for the attempted armed robbery conviction. Wagner's convictions and sentences were affirmed on appeal. *See State v. Wagner*, 194 Ariz. 310 (1999).

¶6        In 2012, the United States Supreme Court held "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller v. Alabama*, 567 U.S. 460, 465 (2012).[2] Contrasting "the juvenile offender whose crime reflects unfortunate yet transient immaturity" with "the rare juvenile offender whose crime reflects irreparable corruption," the *Miller* court held that the sentencer must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 479-80 (internal quotation marks and citation omitted).

¶7        In 2016, the United States Supreme Court declared *Miller* retroactive. *See Montgomery v. Louisiana*, 577 U.S. 190 (2016). The *Montgomery* court described *Miller* as providing a "substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." *Id.* at 210. The *Montgomery* court added that giving

---

[2]        The United States Supreme Court had earlier decided that "[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." *Roper v. Simmons*, 543 U.S. 551, 578 (2005).

effect to *Miller*'s holding required a "hearing where 'youth and its attendant characteristics' are considered as sentencing factors" in order "to separate those juveniles who may be sentenced to life without parole from those who may not." *Id.* (quoting *Miller*, 567 U.S. at 465).

¶8 Following its *Montgomery* decision, the United States Supreme Court summarily granted, vacated the judgments in, and remanded for further consideration, several petitions for writ of certiorari by Arizona defendants who had been "sentenced to life without the possibility of parole for crimes they committed before they turned 18." *See Tatum v. Arizona*, 137 S. Ct. 11, 12 (2016) (Sotomayor, J., concurring). The defendants in those cases had been sentenced after consideration of their youth by the sentencing court. *Id.* at 12-13.

¶9 In *Valencia*, the Arizona Supreme Court "granted review to consider whether *Miller* is a significant change in the law that may require the resentencing of persons serving natural life sentences for crimes committed as juveniles." 241 Ariz. at 208, ¶ 8.[3] At issue were claims for post-conviction relief by two defendants, Healer and Valencia, who had committed first degree murder in 1994 and 1995, when they were sixteen and seventeen years old, respectively. *Id.* at 207, ¶¶ 2-4. Each defendant was sentenced to natural life imprisonment after "the trial court in each case considered various aggravating and mitigating factors, including the defendant's age." *Id.* at ¶ 4.

¶10 The *Valencia* court held that *Miller* and *Montgomery* established a significant change in the law that must be given retroactive effect. *Id.* at 209, ¶ 15. The court further determined that *Miller* and *Montgomery* applied to Healer and Valencia even though the superior court had discretion to impose a more lenient sentence than natural life in each case and even though the court had considered the defendants' youth before imposing sentence. *Id.* at 208-10, ¶¶ 11-12, 17-18. The *Valencia* court observed that because Healer and Valencia committed murder after the elimination of parole, their natural life sentences, though not mandatory, "did amount to sentences of life without the possibility of parole." *Id.* at 208, ¶ 11. The court rejected the State's argument that the superior court's consideration of the defendants' youth before imposing sentence met the

---

[3] The court did not need to decide whether *Miller* applied to juvenile offenders who received life sentences with the possibility of release after serving a minimum number of years because the legislature had reinstated parole for those offenders in 2014. *See* A.R.S. §§ 13-716, 41-1604.09(I)(2); 2014 Sess. Laws, ch. 156, § 2 (2d Reg. Sess.) (H.B. 2593).

requirements of *Miller*. *Id.* at 209, ¶ 16. The court reasoned that argument was refuted by *Montgomery*, and it further referred to the United States Supreme Court's decision to grant, vacate, and remand the cases of similarly situated defendants in *Tatum*. *Id.*

**¶11** Concluding that Healer and Valencia had established colorable claims for post-conviction relief under Rule 32.1(g), the *Valencia* court ruled they were entitled to evidentiary hearings where they would "have an opportunity to establish, by a preponderance of the evidence, that their crimes did not reflect irreparable corruption but instead transient immaturity." *Id.* at 210, ¶ 18.

**¶12** Wagner sought post-conviction relief based on a Rule 32.1(g) significant change in the law, and the State agreed he was entitled to an evidentiary hearing under *Valencia*.

**¶13** Before that hearing took place, the United States Supreme Court decided *Jones v. Mississippi*, 141 S. Ct. 1307 (2021), which addressed the application of *Miller* and *Montgomery* in state courts. The defendant in *Jones* had received a mandatory sentence of life in prison without parole after committing murder when he was 15 years old. *Id.* at 1312. Following *Miller*, the Mississippi Supreme Court ordered a "new sentencing hearing where the sentencing judge could consider Jones's youth and exercise discretion in selecting an appropriate sentence." *Id.* at 1312-13. At the hearing, Jones' attorney argued that the defendant's "chronological age and its hallmark features diminished the penological justifications for imposing the harshest sentences" and the record did not "support a finding that the offense reflects irreparable corruption." *Id.* at 1313 (internal quotation marks and citation omitted). The sentencing judge acknowledged he had discretion to impose a more lenient sentence but determined that Jones should still be sentenced to life in prison without parole "after considering the factors relevant to the child's culpability." *Id.* (internal quotation marks and citation omitted).

**¶14** Jones contested the constitutionality of his resentencing, arguing that *Miller* and *Montgomery* required the judge to make an explicit or implicit finding that he was "permanently incorrigible" before imposing a sentence of life without parole. *Id.* at 1311. The high court disagreed, explaining that *Miller* only required "that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a life-without-parole sentence" and that *Montgomery* "flatly stated that *Miller* did not impose a formal factfinding requirement"

5

or "a finding of fact regarding a child's incorrigibility." *Id.* (internal quotation marks and citation omitted).

¶15　　　The *Jones* majority rejected the dissent's claim that it was "implicitly overruling" or "unduly narrowing" *Miller* and *Montgomery*. *Id.* at 1321. The majority emphasized that its decision did "not overrule *Miller* or *Montgomery*" but merely clarified that those decisions did not "require a finding of permanent incorrigibility." *Id.* at 1321-22. Applying that interpretation to Jones' case, the court concluded the resentencing "complied with [*Miller* and *Montgomery*] because the sentence [of life without parole] was not mandatory and the trial judge had discretion to impose a lesser punishment in light of Jones's youth." *Id.* at 1322.

¶16　　　After *Jones*, the State moved to vacate the pending evidentiary hearing in Wagner's case. The State contended that *Jones* "implicitly overruled" *Valencia*'s application of *Miller* and *Montgomery* to "defendants like Wagner" and that Wagner's sentencing complied with the constitutional requirements imposed by *Miller*, as interpreted by *Jones*, because Wagner's "natural life sentence was not mandatory and the trial court considered Wagner's 'youth and attendant characteristics' before imposing sentence." Wagner disputed the State's argument and contended that *Valencia* was "unaffected by *Jones*."

¶17　　　The superior court granted the State's motion to vacate the hearing and summarily dismissed Wagner's petition for post-conviction relief. Agreeing with the State's position, the court reasoned that "*Jones* implicitly overruled *State v. Valencia*" and *Miller* did not apply to Wagner's "situation because [Wagner's] natural life sentence was a discretionary sentence, and not as a result of a mandatory sentence" and it was imposed after the sentencing judge considered Wagner's "youth and attendant characteristics." Wagner petitions for review.

## DISCUSSION

¶18　　　We consider the superior court's denial of post-conviction relief for an abuse of discretion, which occurs if the court "makes an error of law or fails to adequately investigate the facts necessary to support its decision." *State v. Pandeli*, 242 Ariz. 175, 180, ¶ 4 (2017).

¶19　　　We begin with the general principle that both we and the superior court are bound by the decisions of the Arizona Supreme Court and "are not permitted 'to overrule, modify, or disregard them.'" *State v. Sullivan*, 205 Ariz. 285, 288, ¶ 15 (App. 2003) (quoting *City of Phoenix v. Leroy Liquors*, 177 Ariz. 375, 378 (App. 1993)); *see also State v. Eichorn*, 143 Ariz. 609,

613 (App. 1984) ("Whether prior decisions of the Arizona Supreme Court are to be disaffirmed is a question for that court."). By virtue of the Supremacy Clause, however, we must follow a federal constitutional decision of the United States Supreme Court over a prior decision of our state supreme court if the federal decision has "rendered the position of the Arizona Supreme Court untenable." *State v. Casey*, 10 Ariz. App. 516, 517 (1969); *see also Hernandez-Gomez v. Volkswagen of Am., Inc.*, 201 Ariz. 141, 143-44, ¶ 8 (App. 2001) ("The [Arizona Supreme Court's] conclusion is, of course, binding on this court . . . absent a subsequent decision by the United States Supreme Court governing the same subject."); *cf. State v. Brahy*, 22 Ariz. App. 524, 525 (1974) (holding that First Amendment jurisprudence of the United States Supreme Court did not upset a prior decision of the Arizona Supreme Court because the prior state decision was consistent with the later federal decisions).

¶20        Here, the superior court's determination that *Jones* "implicitly overruled" *Valencia* was erroneous because *Jones* did not render *Valencia* "untenable." *Valencia* was based on *Miller* and *Montgomery*—decisions that *Jones* explicitly stated it was not overruling. Nor was *Jones'* interpretation of *Miller* and *Montgomery*—that a sentencing judge is not obligated to specifically find a juvenile offender "permanently incorrigible" before declining to impose a parole-eligible sentence—incompatible with *Valencia*. Consistent with *Jones*, our supreme court's decision in *Valencia* did not mandate specific findings about a juvenile offender's "permanent incorrigibility" or "transient immaturity" in deciding whether to impose a parole-eligible sentence.[4]

---

[4]        We also note that even if our supreme court's directives in *Valencia* could be interpreted as going beyond what was required by *Jones*, that would not necessarily render *Valencia* incompatible with *Jones*. The *Jones* court noted that nothing prevented states from prescribing sentencing procedures that exceeded requirements under the United States Constitution. *Jones*, 141 S. Ct. at 1323. The *Valencia* decision did not state that it should be read as requiring the minimum process sufficient under the United States Constitution. It is not inconceivable that our supreme court might direct Arizona courts, after considering Arizona's particular sentencing scheme and Arizona's Constitution, to implement procedures that could be interpreted by some as going beyond what is minimally required by the United States Constitution. *Cf. State v. Ault*, 150 Ariz. 459, 463 (1986) ("The Arizona Constitution is even more explicit than its federal counterpart in safeguarding the fundamental liberty of Arizona citizens.")

¶21    The superior court's further determination that *Miller* and *Montgomery* do not apply to Wagner because he did not receive a mandatory life-without-parole sentence was also in error. Although the *Jones* decision clarified what procedures *Miller* and *Montgomery* require of courts when sentencing juvenile homicide offenders, *Jones* said nothing — and therefore altered nothing — about the type of sentence encompassed by *Miller* and *Montgomery*. Accordingly, *Jones* did not implicitly overrule the *Valencia* court's application of *Miller* and *Montgomery* to defendants who — like Wagner — were sentenced to life terms under a scheme that did not allow for the possibility of parole.

¶22    *Miller*'s use of the term "mandatory" does not change this analysis. The crux of *Miller* is two-part: (1) a sentencing court must have the option of imposing a parole-eligible sentence to a juvenile offender who is required to serve a life term, and (2) the court must consider the offender's youth in determining whether to impose a parole-eligible sentence. *Miller*'s use of "mandatory" — as well as the understanding of its counterpart, "discretionary" — must be read in the context of whether a parole-eligible sentence is available. Here, because the superior court had no discretion to sentence Wagner to a parole-eligible term, his sentence is encompassed by *Miller*. It matters not whether the superior court had "discretion" to impose alternative non-parole-eligible penalties or whether the court considered the defendant's youth in exercising that discretion.

¶23    Nor can an argument be made that a life sentence with the possibility of "release" by executive clemency equals a life sentence with the possibility of parole. *See Chaparro v. Shinn*, 248 Ariz. 138, 141-42, ¶ 15 (2020) (comparing the procedures for obtaining parole with the more demanding burdens of obtaining commutation through executive clemency); *see also Graham v. Florida*, 560 U.S. 48, 57, 79, 82 (2010) (reasoning that executive clemency is not equivalent to parole because it does not provide a "meaningful" or "realistic opportunity to obtain release").

¶24    Apart from its determination in prior cases that the opportunity to seek executive clemency is not equivalent to parole eligibility, the United States Supreme Court left little doubt that *Miller* and *Montgomery* apply to the scheme under which Wagner was sentenced when it decided to grant, vacate, and remand the cert petitions of Arizona defendants similarly situated to Wagner "for further consideration in light of *Montgomery*." *Tatum*, 137 S. Ct. at 11. The *Valencia* court, too, recognized that a life sentence with the possibility of release only by executive clemency was encompassed by *Miller* when it held that *Miller* applied to defendants similarly situated to Wagner.

**¶25**　　　The State contends that Wagner's case falls outside *Miller* because the superior court could have sentenced him to an illegal, parole-eligible life term.　If a court's theoretical ability to impose a parole-eligible sentence in violation of state law were an exception to *Miller*, the exception would swallow the rule.　The mere fact that some courts may have mistakenly sentenced defendants to parole-eligible terms in violation of state law, or erroneously described a non-parole-eligible sentence as parole eligible, does not establish that Wagner's sentencing procedure complied with *Miller*.　And the record negates the State's argument that the superior court here "understood the life sentencing alternatives as natural life and life with the possibility of parole after 25 years."　At no point during the sentencing proceedings in this case did the superior court refer to "parole" or convey that it believed it could sentence Wagner to a parole-eligible term.

## CONCLUSION

**¶26**　　　We vacate the superior court's dismissal of Wagner's petition for post-conviction relief and remand for further proceedings consistent with this opinion.



AMY M. WOOD • Clerk of the Court
FILED: ___ AA