## *PRELIMINARY PRINT*

## VOLUME 598 U. S. PART 1
### PAGES 17–38

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

FEBRUARY 22, 2023

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published.   Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

## CRUZ *v.* ARIZONA

### CERTIORARI TO THE SUPREME COURT OF ARIZONA

No. 21–846. Argued November 1, 2022—Decided February 22, 2023

Petitioner John Montenegro Cruz was found guilty of capital murder by an Arizona jury and sentenced to death. Both at trial and on direct appeal, Cruz argued that under *Simmons* v. *South Carolina*, 512 U. S. 154, he should have been allowed to inform the jury that a life sentence in Arizona would be without parole. The trial court and Arizona Supreme Court held that Arizona's capital sentencing scheme did not trigger application of *Simmons*. After Cruz's conviction became final, this Court held in *Lynch* v. *Arizona*, 578 U. S. 613 (*per curiam*), that it was fundamental error to conclude that *Simmons* "did not apply" in Arizona. 578 U. S., at 615. Cruz then sought to raise the *Simmons* issue again in a state postconviction petition under Arizona Rule of Criminal Procedure 32.1(g), which permits a defendant to bring a successive petition if "there has been a significant change in the law that, if applicable to the defendant's case, would probably overturn the defendant's judgment or sentence." The Arizona Supreme Court denied relief after concluding that *Lynch* was not "a significant change in the law."

*Held*: The Arizona Supreme Court's holding that *Lynch* was not a significant change in the law is an exceptional case where a state-court judgment rests on such a novel and unforeseeable interpretation of a state-court procedural rule that the decision is not adequate to foreclose review of the federal claim. Pp. 25–32.

(a) This Court does not decide a question of federal law in a case if the state-court judgment "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman* v. *Thompson*, 501 U. S. 722, 729. In this case the Court focuses on the requirement of adequacy; whether Arizona's "state procedural ruling is adequate is itself a question of federal law," *Beard* v. *Kindler*, 558 U. S. 53, 60. A state procedural ruling that is "'firmly established and regularly followed'" will ordinarily "be adequate to foreclose review of a federal claim." *Lee* v. *Kemna*, 534 U. S. 362, 376. This case is an exception, however, implicating this Court's rule that "an unforeseeable and unsupported state-court decision on a question of state procedure does not constitute an adequate ground to preclude this Court's review of a federal question." *Bouie* v. *City of Columbia*, 378 U. S. 347, 354.

At issue here is the Arizona Supreme Court's decision that Cruz's motion for postconviction relief failed to satisfy Arizona Rule of Crimi-

nal Procedure 32.1(g) because *Lynch* did not result in "a significant change in the law." That court reasoned that *Lynch* was not a significant change in the law because it relied on *Simmons*, which was clearly established law at the time of Cruz's trial. It so held even though *Lynch* overruled binding Arizona precedent foreclosing *Simmons* relief for Arizona capital defendants, and even though the Arizona Supreme Court had previously explained that the "archetype" of a "significant change in the law" is the overruling of "previously binding case law." *State* v. *Shrum*, 220 Ariz. 115, 118, 203 P. 3d 1175, 1178. While the court reasoned that a significant change in the application of a law is not the same as a significant change in the law itself, Arizona can point to no other Rule 32.1(g) decision supporting that distinction. This interpretation of Rule 32.1(g) is entirely new and conflicts with prior Arizona case law. The novelty arises from the way in which the Arizona Supreme Court disregarded the effect of *Lynch* on Arizona law. Ordinarily, Arizona courts applying Rule 32.1(g) focus on how a decision changes the law that is operative in the State. Here, however, the Arizona Supreme Court disregarded the many state precedents overruled by *Lynch*, focusing instead on whether *Lynch* had wrought a significant change in federal law. Because the Arizona Supreme Court's interpretation is so novel and unforeseeable, it cannot constitute an adequate state procedural ground for the challenged decision.

Arizona's interpretation generates a catch-22 for Cruz and other similarly situated capital defendants that only serves to compound its novelty. To obtain relief under Rule 32.1(g), a defendant must establish not just a significant change in the law but also that the law in question applies retroactively under *Teague* v. *Lane,* 489 U. S. 288. Prior to the Arizona Supreme Court's decision below, it was possible to show that *Lynch* both was a "significant change in the law" and satisfied retroactivity because it merely applied *Simmons*. On the interpretation adopted below, however, the argument that *Lynch* applied "settled" federal law for retroactivity purposes also implies that *Lynch* does not represent a "significant change in the law." Earlier Rule 32.1(g) decisions did not generate this catch-22. Given the Court's conclusion that the Arizona Supreme Court's application of Rule 32.1(g) to *Lynch* is so novel and unfounded that it does not constitute an adequate state procedural ground, it is unnecessary for the Court to determine whether the decision below is also independent of federal law. Pp. 25–29.

(b) Counterarguments presented in this case offer various reformulations of the argument that *Lynch* was not a "significant change in the law" for Rule 32.1(g) purposes, but they fail to grapple with the basic point that *Lynch* reversed previously binding Arizona Supreme Court precedent. The fact that *Lynch* was a summary reversal did not justify

Syllabus

the Arizona Supreme Court in treating *Lynch* differently than other transformative decisions of this Court. Although *Lynch* did not change this Court's interpretation of *Simmons*, it did change the operation of *Simmons* by Arizona courts in a way that matters for Rule 32.1(g). And it makes no difference that *Lynch* did not alter federal law. The analytic focus of Arizona courts applying Rule 32.1(g) has always been on the impact to Arizona law. Nor does this Court's interpretation forestall Arizona's ability to develop its Rule 32.1(g) jurisprudence in new contexts. That the Arizona Supreme Court had never before applied Rule 32.1(g) to a summary reversal did not present a new context in this case. Finally, no effective parallel can be drawn between Rule 32.1(g) and very different procedural rules governing federal prisoners, *e. g.*, 28 U. S. C. §§ 2255(f), (h). Pp. 29–32.

251 Ariz. 203, 487 P. 3d 991, vacated and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KAGAN, KAVANAUGH, and JACKSON, JJ., joined. BARRETT, J., filed a dissenting opinion, in which THOMAS, ALITO, and GORSUCH, JJ., joined, *post*, p. 32.

*Neal Kumar Katyal* argued the cause for petitioner. With him on the briefs were *Katherine B. Wellington, William E. Havemann, Jon M. Sands*, and *Cary Sandman*.

*Joseph A. Kanefield* argued the cause for respondent. With him on the briefs were *Mark Brnovich*, Attorney General of Arizona, *Brunn W. Roysden III*, Solicitor General, *Jeffrey L. Sparks*, Deputy Solicitor General, and *Erin Bennett, Laura P. Chiasson*, and *Ginger Jarvis*, Assistant Attorneys General.*

————

*\*Melanie L. Bostwick, Thomas M. Bondy*, and *Melanie Hallums* filed a brief for Federal Courts Scholars as *amici curiae* urging reversal.

Briefs of *amici curiae* urging vacatur were filed for the Arizona Capital Representation Project et al. by *Elizabeth G. Bentley*; for LatinoJustice PRLDEF et al. by *Bruce H. Schneider, Lourdes Rosado, Janai S. Nelson*, and *Samuel Spital*; and for the Ohio Justice & Policy Center et al. by *Michael E. Bern, Michael L. Zuckerman*, and *Easha Anand.*

Briefs of *amici curiae* were filed for the National Association of Criminal Defense Lawyers et al. by *Noah A. Levine, Jeffrey L. Fisher, David D. Cole*, and *Jared G. Keenan*; and for Jonathan F. Mitchell et al. by *Adam K. Mortara* and *Mr. Mitchell*, both *pro se*.

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Petitioner John Montenegro Cruz, a defendant sentenced to death, argued at trial and on direct appeal that his due process rights had been violated by the trial court's failure to permit him to inform the jury that a life sentence in Arizona would be without parole. See *Simmons* v. *South Carolina*, 512 U. S. 154, 161–162 (1994) (plurality opinion); *id.*, at 178 (O'Connor, J., concurring in judgment). Those courts rejected Cruz's *Simmons* argument, believing, incorrectly, that Arizona's sentencing and parole scheme did not trigger application of *Simmons*. See *State* v. *Cruz*, 218 Ariz. 149, 160, 181 P. 3d 196, 207 (2008).

After the Arizona Supreme Court repeated that mistake in a series of cases, this Court summarily reversed the Arizona Supreme Court in *Lynch* v. *Arizona*, 578 U. S. 613 (2016) (*per curiam*), and held that it was fundamental error to conclude that *Simmons* "did not apply" in Arizona. 578 U. S., at 615.

Relying on *Lynch*, Cruz filed a motion for state postconviction relief under Arizona Rule of Criminal Procedure 32.1(g). That Rule permits a defendant to bring a successive petition if "there has been a significant change in the law that, if applicable to the defendant's case, would probably overturn the defendant's judgment or sentence." Ariz. Rule Crim. Proc. 32.1(g) (Cum. Supp. 2022); see also *ibid.* (Cum. Supp. 2017).

The Arizona Supreme Court denied relief after concluding that *Lynch* was not a "significant change in the law." 251 Ariz. 203, 207, 487 P. 3d 991, 995 (2021). The Arizona Supreme Court reached this conclusion despite having repeatedly held that an overruling of precedent is a significant change in the law. See *id.*, at 206, 487 P. 3d, at 994 (The "'archetype of such a change occurs when an appellate court overrules previously binding case law'").

The Court granted certiorari to address whether the Arizona Supreme Court's holding that *Lynch* was not a signifi-

cant change in the law for purposes of Rule 32.1(g) is an adequate and independent state-law ground for the judgment.   It is not.

## I

## A

Cruz argued at trial and on direct appeal that the trial court violated his due process rights under *Simmons* by not allowing him to inform the jury that the only sentencing alternative to death in his case was life without parole.

Prior to Cruz's trial, this Court had repeatedly reaffirmed *Simmons*' holding.   In case after case, the Court explained that when "a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process entitles the defendant 'to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel.'"   *Shafer* v. *South Carolina,* 532 U. S. 36, 39 (2001) (quoting *Ramdass* v. *Angelone,* 530 U. S. 156, 165 (2000) (plurality opinion)); see also *Kelly* v. *South Carolina,* 534 U. S. 246, 248, 251–252 (2002).

The same year this Court decided *Simmons,* Arizona amended its parole statute to abolish parole for all felonies committed after 1993.   Ariz. Rev. Stat. Ann. §41–1604.09(I)(1) (1994).   Nevertheless, Arizona's capital sentencing statute continued to list two alternatives to death: (1) "natural life," which barred release "on any basis," and (2) "life" with the possibility of "release" after at least 25 years.   §13–751(A).   Because of the elimination of parole, however, the only "release" available to capital defendants convicted after 1993 was, and remains, executive clemency.

Despite the elimination of parole for capital defendants, the Arizona Supreme Court held, in a series of cases commencing with Cruz's direct appeal, that *Simmons* did not apply in Arizona because the State's sentencing scheme was sufficiently distinct from the one at issue in *Sim-*

*mons*.[1]    That line of cases culminated in *State* v. *Lynch*, 238
Ariz. 84, 357 P. 3d 119 (2015).   There, the Arizona Supreme
Court refused to apply *Simmons* on the ground that Lynch
could have received a life sentence under § 13–751(A) and
thus been eligible for "executive clemency" after 25 years.
238 Ariz., at 103–104, 357 P. 3d, at 138–139.

This Court summarily reversed in *Lynch* v. *Arizona*, 578
U. S. 613, holding that *Simmons* applies with full force in
Arizona.   The Court noted that "*Simmons* expressly re-
jected the argument that the possibility of clemency dimin-
ishes a capital defendant's right to inform a jury of his parole
ineligibility."   578 U. S., at 615.   The Court also observed
that *Simmons* foreclosed the State's alternative argument
that relied on the potential for future legislative reforms to
Arizona's parole statute.   578 U. S., at 616.

B

In 2005, Cruz was convicted and sentenced to death for
the murder of a Tucson police officer.   Cruz's conviction oc-
curred over a decade after the decision in *Simmons*, but be-
came final before the decision in *Lynch*.

At trial, Cruz repeatedly sought to inform the jury of his
parole ineligibility.   Citing *Simmons*, Cruz expressed con-
cern that unless he had "the opportunity to present the miti-
gating factor that he will not be released from prison," jurors
would be left to "speculate" about Arizona's capital sentenc-
ing scheme and whether it allows for parole.   App. 28–29.
The trial court "conclude[d] that *Simmons* is distinguish-
able" and did not act on Cruz's concern.   *Id.*, at 41.

Cruz also informed the trial court of his intent to call
as a witness the chairman of the Arizona Board of Execu-

---

[1] See, *e. g.*, *State* v. *Benson*, 232 Ariz. 452, 465, 307 P. 3d 19, 32 (2013);
*State* v. *Hardy*, 230 Ariz. 281, 293, 283 P. 3d 12, 24 (2012); *State* v. *Chappell*,
225 Ariz. 229, 240, 236 P. 3d 1176, 1187 (2010); *State* v. *Hargrave*, 225 Ariz.
1, 14–15, 234 P. 3d 569, 582–583 (2010); *State* v. *Garcia*, 224 Ariz. 1, 18, 226
P. 3d 370, 387 (2010).

tive Clemency to testify that the board no longer had authority to parole any capital defendants. In response, the State sought to prevent Cruz from offering evidence as to "the prospects of parole for an inmate sentenced to life imprisonment." *Id.*, at 45. The trial court precluded the testimony.

During the aggravation/mitigation phase of an Arizona capital trial, the jury must first determine whether an aggravating circumstance exists. The jury here found a single aggravating factor that Cruz knowingly killed a police officer. See Ariz. Rev. Stat. Ann. § 13–703(F)(10) (2003) (renumbered as § 13–751(F)(8)). The jury then heard from 16 defense witnesses who testified to Cruz's good behavior in prison, his abuse and neglect as a child, his posttraumatic stress disorder, and his history of drug use, including around the time of the offense.

After counsel made closing arguments, the judge instructed the jury that Cruz was eligible for three penalties: (1) "Death by lethal injection"; (2) "Life imprisonment with no possibility of parole or release from imprisonment on any basis"; and (3) "Life imprisonment with a possibility of parole or release from imprisonment" after 25 years. App. 94. The reference to parole was plainly wrong. See *Lynch*, 578 U. S., at 615 (the only "release" available under Arizona law is executive clemency, not parole). The judge further instructed the jury that its only choice was whether or not to sentence Cruz to death; if the jury did not vote for death, the judge would then choose between the two remaining possible sentences. The jury sentenced Cruz to death.

Three jurors, unprompted by Cruz, issued a press release the next day. The jurors explained that this had been a "gut-wrenching decision" and that "[t]here was not one person on the jury who did not cry." App. 144. They reported that they would rather have voted for life without the possibility of parole, but that they were not given that option. A fourth juror later stated in a declaration: "If I could have

voted for a life sentence without parole, I would have voted for that option." *Id.*, at 269.

Cruz thereafter moved for a new trial, arguing that the instructions did not give the jury "an accurate and complete understanding of the consequences of a non-death verdict." *Id.*, at 137. The trial judge denied the motion. He concluded, erroneously, that the jury had been "correctly instructed on the law," and found it "entirely speculative" whether Cruz would be considered for parole after 25 years. *Id.*, at 169–170.

On direct appeal, Cruz again pressed his *Simmons* claim. The Arizona Supreme Court rejected it. Repeating the same legal error made by the trial court, the court reasoned that *Simmons* was distinguishable because "[n]o state law would have prohibited Cruz's release on parole after serving twenty-five years." *Cruz*, 218 Ariz., at 160, 181 P. 3d, at 207.

Having raised his *Simmons* claim on direct review, Cruz was precluded from raising it again in his initial state postconviction petition. See Ariz. Rule Crim. Proc. 32.2(a)(2).

C

After Cruz's conviction became final, this Court decided *Lynch*, thereby reaffirming that *Simmons* applies in Arizona. Cruz then filed a successive motion for state postconviction relief pursuant to Arizona Rule of Criminal Procedure 32.1(g). That Rule permits a successive petition for postconviction relief if "there has been a significant change in the law that, if applicable to the defendant's case, would probably overturn the defendant's judgment or sentence." Cruz argued that *Lynch* was a significant change in the law because it "had transformative effects on previously binding Arizona law." App. 387.

The Arizona Supreme Court denied relief after holding that *Lynch* was "not a significant change in the law." 251 Ariz., at 207, 487 P. 3d, at 995. As the Arizona Supreme Court itself noted, it had interpreted Rule 32.1(g) to require

"'some transformative event, a clear break from the past.'" *Id.*, at 206, 487 P. 3d, at 994 (quoting *State* v. *Shrum*, 220 Ariz. 115, 118, 203 P. 3d 1175, 1178 (2009)). "'The archetype of such a change occurs when an appellate court overrules previously binding case law.'" *Ibid.* Nevertheless, the Arizona Supreme Court held that *Lynch* was not a significant change in the law because "the law relied upon by the Supreme Court in [*Lynch*]—*Simmons*—was clearly established at the time of Cruz's trial . . . despite the misapplication of that law by the Arizona courts." 251 Ariz., at 206, 203 P. 3d, at 994.

In so holding, the Arizona Supreme Court rejected Cruz's argument that *Lynch* should qualify as a significant change in the law under Rule 32.1(g) "because it significantly changed how Arizona applied federal law." 251 Ariz., at 207, 487 P. 3d, at 995. The Arizona Supreme Court responded, without citation to any of its prior cases, that Rule 32.1(g) requires "a significant change in the law, whether state or federal—not a significant change in the *application* of the law." *Ibid.* (emphasis in original).

This Court granted Cruz's petition for certiorari, 596 U. S. —— (2022), limited to the question whether the Arizona Supreme Court's holding that Rule 32.1(g) precluded post-conviction relief is an adequate and independent state-law ground for the judgment.

II

"This Court will not take up a question of federal law in a case 'if the decision of [the state] court rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgment.'" *Lee* v. *Kemna*, 534 U. S. 362, 375 (2002) (quoting *Coleman* v. *Thompson*, 501 U. S. 722, 729 (1991) (emphasis added in *Kemna*)). Here the Court focuses on the second of these requirements: adequacy.

"The question whether a state procedural ruling is adequate is itself a question of federal law." *Beard* v. *Kindler*, 558 U. S. 53, 60 (2009). Ordinarily, a violation of a state pro-

cedural rule that is "'firmly established and regularly followed' . . . will be adequate to foreclose review of a federal claim." *Lee*, 534 U. S., at 376. Nevertheless, in "exceptional cases," a "generally sound rule" may be applied in a way that "renders the state ground inadequate to stop consideration of a federal question." *Ibid.* This is one of those exceptional cases.

In particular, this case implicates this Court's rule, reserved for the rarest of situations, that "an unforeseeable and unsupported state-court decision on a question of state procedure does not constitute an adequate ground to preclude this Court's review of a federal question." *Bouie* v. *City of Columbia*, 378 U. S. 347, 354 (1964). "Novelty in procedural requirements cannot be permitted to thwart review in this Court applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights." *NAACP* v. *Alabama ex rel. Patterson*, 357 U. S. 449, 457–458 (1958). This Court has applied this principle for over a century. See, *e. g., Enterprise Irrigation Dist.* v. *Farmers Mut. Canal Co.*, 243 U. S. 157, 165 (1917) (holding that a state ground was adequate where it was not "without fair support or so unfounded as to be essentially arbitrary or merely a device to prevent a review of the other [federal] ground of the judgment"). And this Court has continued to reaffirm this important rule. See *Walker* v. *Martin*, 562 U. S. 307, 320 (2011) ("A state ground, no doubt, may be found inadequate when 'discretion has been exercised to impose novel and unforeseeable requirements without fair or substantial support in prior state law'" (quoting 16B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4026, p. 386 (2d ed. 1996) (Wright & Miller))).

At issue here is the Arizona Supreme Court's decision that Cruz's motion for postconviction relief failed to satisfy Arizona Rule of Criminal Procedure 32.1(g). Rule 32.1(g) allows defendants to file a successive or untimely postconviction petition if there has been "a significant change in the

law." Arizona courts have interpreted that phrase to require a "transformative event, a 'clear break from the past.'" *Shrum*, 220 Ariz., at 118, 203 P. 3d, at 1178 (quoting *State* v. *Slemmer*, 170 Ariz. 174, 182, 823 P. 2d 41, 49 (1991) (some internal quotation marks omitted)). "The archetype of such a change occurs when an appellate court overrules previously binding case law." *Shrum*, 220 Ariz., at 118, 203 P. 3d, at 1178.

Straightforward application of these principles should have led to the conclusion that *Lynch* was a "significant change in the law" under Rule 32.1(g). *Lynch* overruled binding Arizona precedent. Before *Lynch*, Arizona courts held that capital defendants were not entitled to inform the jury of their parole ineligibility. After *Lynch*, Arizona courts recognize that capital defendants have a due process right to provide the jury with that information when future dangerousness is at issue. It is hard to imagine a clearer break from the past.

Instead of reaching that conclusion, however, the Arizona Supreme Court held that *Lynch* was not "a significant change in the law." 251 Ariz., at 207, 487 P. 3d, at 995. It reasoned that *Lynch* could not be a significant change because *Lynch* relied on *Simmons*, and *Simmons* "was clearly established at the time of Cruz's trial . . . despite the misapplication of that law by the Arizona courts." 251 Ariz., at 206, 487 P. 3d, at 994. The court added that it was not enough that *Lynch* changed how Arizona courts applied federal law because "Rule 32.1(g) requires a significant change in the law . . . not a significant change in the *application* of the law." 251 Ariz., at 207, 487 P. 3d, at 995 (emphasis in original).

This interpretation of Rule 32.1(g) is entirely new and in conflict with prior Arizona case law. The State points to no other instance in which the overturning of binding Arizona precedent failed to satisfy Rule 32.1(g)'s "significant change in the law" requirement. Nor has the State identified any other Rule 32.1(g) decision distinguishing between a

"change in the law" and a "change in the *application* of
the law." *Ibid.* (emphasis in original). The application of
Rule 32.1(g) below is thus the opposite of firmly established
and regularly followed.

What makes the interpretation so novel is the way in
which it disregards the effect of *Lynch* on the law in Arizona.
Ordinarily, Arizona courts applying Rule 32.1(g) focus on
how a decision changes the law that is operative in Arizona,
regardless of whether the intervening decision is a state or
federal one. See, *e. g.*, *Shrum*, 220 Ariz., at 119, 203 P. 3d,
at 1179 (holding that a state decision did not satisfy Rule
32.1(g) because it did not "overrule any prior opinion"); *State*
v. *Valencia*, 241 Ariz. 206, 208–209, 386 P. 3d 392, 394–395
(2016) (finding a "significant change in the law" where a prec-
edent of this Court changed the law applied in Arizona);
*State* v. *Poblete*, 227 Ariz. 537, 540, 260 P. 3d 1102, 1105 (App.
2011) (same); see also *State* v. *Bigger*, 251 Ariz. 402, 412, 492
P. 3d 1020, 1030 (2021) (determining that a decision of this
Court was not a "significant change in the law" in part be-
cause it did not "effec[t] a change in Arizona law"). Here,
however, the Arizona Supreme Court considered only
whether there had been a significant change in federal law,
disregarding the fact that *Lynch* overruled binding Arizona
Supreme Court precedents, to dramatic effect for capital de-
fendants in Arizona.

The consequences of the interpretation below compound
its novelty. Arizona requires a petitioner seeking Rule
32.1(g) relief to establish not just a "significant change in the
law," but also that the law in question applies retroactively
under this Court's analysis in *Teague* v. *Lane*, 489 U. S. 288
(1989). See, *e. g.*, *State* v. *Towery*, 204 Ariz. 386, 389, 64 P. 3d
828, 831 (2003) (applying *Teague*). Under Arizona's long-
standing Rule 32.1(g) precedents, it is possible to satisfy both
criteria. See, *e. g.*, Order in *State* v. *Rose*, No. CR2007–
149013–002, pp. 19–23 (Super. Ct. Maricopa Cty., Ariz., Aug.
14, 2020) (determining in another case, prior to the decision

below, that *Lynch* was both a "significant change in the law" and satisfied retroactivity because it "merely applied the rule of *Simmons*"). On the interpretation adopted below, however, it is impossible for Cruz, and similarly situated capital defendants, to obtain relief. To show retroactivity, Cruz argued before the Arizona Supreme Court that *Lynch* applied "settled" federal law. Under the decision below, however, that same argument implies that *Lynch* was not a "significant change in the law." The fact that the Arizona Supreme Court's decision in this case generates this catch-22, whereas earlier Rule 32.1(g) decisions did not, further underscores the novelty of the decision and its departure from pre-existing Arizona Supreme Court law.

Under these unusual circumstances, the Arizona Supreme Court's application of Rule 32.1(g) to *Lynch* was so novel and unfounded that it does not constitute an adequate state procedural ground. It is therefore not necessary to reach the further issue whether the decision below is independent of federal law.[2]

## III

The State and the dissent offer various reformulations of the argument that *Lynch* was not a "significant change in the law" for Rule 32.1(g) purposes, but each fails to grapple with the basic point that *Lynch* reversed previously binding Arizona Supreme Court precedent.

Both the State and the dissent argue that the Arizona Supreme Court was justified in treating *Lynch* differently than other transformative decisions of this Court, such as *Ring* v. *Arizona*, 536 U. S. 584 (2002), and *Padilla* v. *Kentucky*, 559 U. S. 356 (2010), because *Lynch* was a summary reversal and so did not "impos[e] a new or changed interpretation of state

---

[2] The Court also does not need to reach Cruz's additional arguments that the decision below reflects an attitude of hostility toward *Simmons* v. *South Carolina*, 512 U. S. 154 (1994) (plurality opinion), and *Lynch* v. *Arizona*, 578 U. S. 613 (2016) (*per curiam*), and impermissibly discriminates against federal law by nullifying Cruz's rights under *Simmons*.

or federal law." Brief for Respondent 12. As the dissent puts the argument: *Lynch* "did not change the law in Arizona." *Post*, at 37 (opinion of BARRETT, J.).

These arguments miss the point. While *Lynch* did not change this Court's interpretation of *Simmons*, it did change the operative (and mistaken) interpretation of *Simmons* by Arizona courts. *Lynch* thus changed the law in Arizona in the way that matters for purposes of Rule 32.1(g): It overruled previously binding Arizona Supreme Court precedent preventing capital defendants from informing the jury of their parole ineligibility.[3]

Contrary to the dissent, *post*, at 34–35, it makes no difference that *Lynch* did not alter federal law. While Arizona Supreme Court decisions applying Rule 32.1(g) to federal decisions such as *Ring* and *Padilla* have understandably noted the effect those decisions had on both federal and state law, the analytic focus of Arizona courts has always been on the impact to Arizona law. See *supra*, at 28; see also *Towery*, 204 Ariz., at 390, 64 P. 3d, at 832 (*Ring* "imposes a new burden on the state. Thus we conclude that *Ring* [satisfies Rule 32.1(g)]"). That focus is unsurprising given that Rule 32.1(g) is a state procedural rule governing the availability of state postconviction relief in state court.

The State next objects that a decision against it would forestall Arizona's ability to "flesh out" its Rule 32.1(g) jurisprudence in new contexts. Tr. of Oral Arg. 40. That is incorrect. The Arizona Supreme Court is free to extend its prior Rule 32.1(g) jurisprudence, including by applying the Rule to new situations as they arise. What the Arizona Supreme Court cannot do is foreclose federal review by adopt-

---

[3] At oral argument, the State also argued that *Lynch*, at the very least, was not a "significant" change in the law. Tr. of Oral Arg. 34–36. By any measure, though, *Lynch* was a "transformative event," *State* v. *Shrum*, 220 Ariz. 115, 118, 203 P. 3d 1175, 1178 (2009), in Arizona. In fact, the State conceded *Lynch* was a "clear break" from the past in Arizona courts. Tr. of Oral Arg. 36.

ing a "'novel and unforeseeable'" approach to Rule 32.1(g) that lacks "'fair or substantial support in prior state law.'" *Walker*, 562 U. S., at 320 (quoting 16B Wright & Miller § 4026, at 386).

The dissent argues that this case did present a new context because the Arizona Supreme Court had never before applied Rule 32.1(g) to a summary reversal. There was no reason, however, to treat this case any differently than past cases. Whereas the Arizona Supreme Court had previously looked to the effect of an intervening federal or state decision on Arizona law, *supra*, at 28, here it focused exclusively on whether there had been a change in federal law. The court thus disregarded that *Lynch* overruled "previously binding case law" in Arizona, the "archetype" of a significant change in the law. *Shrum*, 220 Ariz., at 118, 203 P. 3d, at 1178.[4]

Finally, the dissent attempts to draw a parallel between Rule 32.1(g) and certain procedural rules governing federal

---

[4] The Arizona Supreme Court claims it was acting consistently with its *Shrum* decision in this case. 251 Ariz., at 207, 487 P. 3d, at 995. That assertion does not stand up under inspection. In *Shrum*, the Arizona Supreme Court held that an Arizona decision did not constitute a "significant change in the law" because it "did not change any interpretation of Arizona constitutional law . . . and no precedent was overruled, all of which meant 'the law remained precisely the same.'" 251 Ariz., at 207, 487 P. 3d, at 995 (quoting *Shrum*, 220 Ariz., at 119, 203 P. 3d, at 1179). In this case, the court reasoned it was acting consistently with *Shrum* because *Lynch* "did not change any interpretation of federal constitutional law . . . and no Supreme Court precedent was overruled or modified." 251 Ariz., at 207, 487 P. 3d, at 995. The language used, however, reveals the inconsistency. While in *Shrum* the Arizona Supreme Court looked for a change in Arizona law, including whether any "precedent was overruled," in this case the court instead asked only whether federal law had changed or whether federal "Supreme Court precedent was overruled." No precedent of the Supreme Court of the United States was overruled, but precedent of the Arizona Supreme Court certainly was. Under the Arizona Supreme Court's ordinary approach, then, there was a "significant change in the law."

prisoners seeking to file delayed or successive § 2255 motions. See 28 U. S. C. §§ 2255(f), (h). The parallel breaks down, however, because the rules are different. Unlike § 2255(h)(2), which requires "a new rule of [federal] constitutional law," and § 2255(f)(3), which requires a right "newly recognized by the [U. S.] Supreme Court," the relevant portion of Arizona's Rule 32.1(g) simply requires "a significant change in the law." As the Arizona Supreme Court has repeatedly interpreted that Rule, *Lynch* should qualify because it overruled binding Arizona precedent, creating a clear break from the past in Arizona courts. The Arizona Supreme Court's contrary decision was unprecedented and unforeseeable. Only violations of state rules that are "'firmly established and regularly followed' . . . will be adequate to foreclose review of a federal claim." *Lee*, 534 U. S., at 376. That standard is not met here.

\* \* \*

In exceptional cases where a state-court judgment rests on a novel and unforeseeable state-court procedural decision lacking fair or substantial support in prior state law, that decision is not adequate to preclude review of a federal question. The Arizona Supreme Court applied Rule 32.1(g) in a manner that abruptly departed from and directly conflicted with its prior interpretations of that Rule. Accordingly, the judgment of the Supreme Court of Arizona is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE BARRETT, with whom JUSTICE THOMAS, JUSTICE ALITO, and JUSTICE GORSUCH join, dissenting.

The adequate and independent state grounds doctrine is the product of two fundamental features of our jurisdiction. First, this Court is powerless to revise a state court's interpretation of its own law. *Murdock* v. *Memphis*, 20 Wall. 590,

BARRETT, J., dissenting

636 (1875). We thus cannot disturb state-court rulings on state-law questions that are independent of federal law. Second, Article III empowers federal courts to render judgments, not advisory opinions. *Hayburn's Case*, 2 Dall. 409 (1792). So if an independent state ground of decision is adequate to sustain the judgment, we lack jurisdiction over the entire dispute. Anything we said about alternative federal grounds would not affect the ultimate resolution of the case and would therefore be advisory. *Herb* v. *Pitcairn*, 324 U. S. 117, 126 (1945).

The Court holds that the Arizona Supreme Court's application of Rule 32.1(g) is inadequate to support the judgment below. That assertion is jarring, because the bar for finding inadequacy is extraordinarily high. When, as here, the argument is based on the state court's inconsistent or novel application of its law, the bar is met only by a decision so blatantly disingenuous that it reveals hostility to federal rights or those asserting them. See *Walker* v. *Martin*, 562 U. S. 307, 321 (2011). Given the respect we owe state courts, that is not a conclusion we should be quick to draw—and ordinarily, we are not quick to draw it.

*NAACP* v. *Alabama ex rel. Patterson* illustrates how unprincipled a state-court decision must be before we treat it as inadequate. 357 U. S. 449 (1958). There, the NAACP asked the Alabama Supreme Court to vacate a civil contempt order as unconstitutional. That court denied review on the ground that the NAACP had improperly pursued a writ of certiorari, when it should have sought a writ of mandamus. *Id.*, at 454–455. We held this procedural ruling inadequate because it was irreconcilable with the Alabama Supreme Court's "past unambiguous holdings." *Id.*, at 456. Though a multitude of that court's own precedents contradicted its ruling, one in particular stood out: The court had evaluated similar constitutional claims brought by a petitioner in cahoots with the Ku Klux Klan, even though he had also pursued a writ of certiorari. *Id.*, at 456–457. The subtext of

the Alabama Supreme Court's decision unmistakably revealed its hostility toward the NAACP's federal rights. See also *Ford* v. *Georgia*, 498 U. S. 411, 425 (1991) (Georgia Supreme Court decision was inadequate because it applied precedent that was inapplicable "by its own terms"); *Barr* v. *City of Columbia*, 378 U. S. 146, 149–150 (1964) (South Carolina Supreme Court ruling was inadequate because that court had proceeded differently in an "identical" case a few weeks later).

Today's Court, while admitting that the novelty prong of inadequacy is "reserved for the rarest of situations," *ante*, at 26, concludes that the Arizona Supreme Court's application of Rule 32.1(g) falls in the same category as *Patterson*. I respectfully disagree. Unlike the state courts in cases like *Patterson*, the Arizona Supreme Court did not contradict its own settled law. Instead, it confronted a new question and gave an answer reasonably consistent with its precedent.

The ordinary rule in Arizona is that criminal defendants must present any constitutional challenges on direct review or in a timely postconviction-review petition. Ariz. Rules Crim. Proc. 32.2(a), 32.4(b)(3)(A) (2020). Rule 32.1(g) allows a second or delayed bite at the postconviction-relief apple when "there has been a significant change in the law that, if applicable to the defendant's case, would probably overturn the defendant's judgment or sentence."

On several occasions, the Arizona Supreme Court has addressed whether an intervening judicial decision constitutes a "significant change in the law" for purposes of Rule 32.1(g). For instance, it has considered whether this Court's decisions significantly changed the content of federal law. *E. g.*, *State* v. *Bigger*, 251 Ariz. 402, 412, 492 P. 3d 1020, 1030 (2021) (a decision that "affirmed the Supreme Court's jurisprudence" was not a significant change); *State* v. *Valencia*, 241 Ariz. 206, 209, 386 P. 3d 392, 395 (2016); see also *State* v. *Poblete*, 227 Ariz. 537, 540, 260 P. 3d 1102, 1105 (App. 2011). It has also analyzed whether intervening state-court decisions sig-

nificantly changed Arizona law. *E. g.*, *State* v. *Shrum*, 220
Ariz. 115, 119–120, 203 P. 3d 1175, 1179–1180 (2009); *State* v.
*Slemmer*, 170 Ariz. 174, 179, 182, 823 P. 2d 41, 46, 49 (1991);
*State* v. *Rendon*, 161 Ariz. 102, 104, 776 P. 2d 353, 355 (1989).

Cruz's case, however, raised a question of first impression:
whether a "significant change" occurs when an intervening
decision reaffirms existing law, but rectifies an erroneous ap-
plication of that law. That was the effect of *Lynch* v. *Ari-
zona*, 578 U. S. 613 (2016) (*per curiam*), which corrected the
Arizona Supreme Court's application of *Simmons* v. *South
Carolina*, 512 U. S. 154 (1994), and its progeny. An inter-
vening decision like *Lynch*, which undisputedly did not
change any legal doctrine, has no analog in Arizona's Rule
32.1(g) jurisprudence. See *ante*, at 24 (*Lynch* "*reaffirm[ed]*
that *Simmons* applies in Arizona" (emphasis added)). So
the Arizona Supreme Court devised a rule: "Rule 32.1(g) re-
quires a significant change in the law, whether state or fed-
eral—not a significant change in the *application* of the law."
251 Ariz. 203, 207, 487 P. 3d 991, 995 (2021). By that stand-
ard, *Lynch* did not satisfy Rule 32.1(g). 251 Ariz., at 207,
487 P. 3d, at 995.

The Court criticizes the "novelty" of the Arizona Supreme
Court's law versus application-of-law distinction, as it does
not appear in any other Arizona precedent. *Ante*, at 27–28.
A point that deserves emphasis at the outset: Novelty does
*not* mean that a rule is inadequate merely because a state
court announced it for the first time in the decision under
review, and I do not understand the Court to suggest other-
wise. Legal systems based on precedent depend on cases to
present novel fact patterns, which enable courts to articulate
new principles of law or to clarify old ones with greater pre-
cision. *Beard* v. *Kindler*, 558 U. S. 53, 65 (2009) (Kennedy,
J., concurring). We do a disservice to that mode of legal
development when we "disregard a state procedural ground
that was not in all respects explicit before the case when it
was first announced"—unless, of course, the decision demon-

strates "a purpose or pattern to evade constitutional guarantees." *Ibid.* That is why we have been careful to explain that, in the inadequacy context, a decision is "'novel'" only when it was wholly "'unforeseeable'" and lacked any "'fair or substantial support in prior state law.'" *Walker*, 562 U. S., at 320 (quoting 16B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4026, p. 386 (2d ed. 1996)).

The Court's real objection is that it thinks the Arizona Supreme Court violated its own Rule 32.1(g) precedent by holding that *Lynch* is not a significant change in law. For one, the Court says, the Arizona Supreme Court has previously explained that "'[t]he archetype'" of a significant change occurs "'when an appellate court overrules previously binding case law,'" and *Lynch* overruled binding Arizona case law. *Ante*, at 27 (quoting *Shrum*, 220 Ariz., at 118, 203 P. 3d, at 1178). In isolation, that language does suggest that *Lynch* is a "significant change" for purposes of Rule 32.1(g). Context, however, shows there is more to the story: *Shrum* illustrated its point with the example of *Ring* v. *Arizona*, 536 U. S. 584 (2002), which was a significant change because it overruled our contrary decision in *Walton* v. *Arizona*, 497 U. S. 639 (1990). 220 Ariz., at 118–119, 203 P. 3d, at 1178–1179 (citing *State* v. *Towery*, 204 Ariz. 386, 390, 64 P. 3d 828, 832 (2003)). Unlike *Lynch*, *Ring* changed the governing legal doctrine, not a mistaken application of that doctrine. So *Shrum*'s reasoning is not inconsistent with the result below.

The Court also asserts that Arizona courts typically analyze how an intervening decision affects the law *in Arizona*, so by that logic, decisions like *Lynch* that change the law's on-the-ground application in Arizona constitute grounds for relief under Rule 32.1(g). *Ante*, at 28. I do not read the Arizona Supreme Court's "past unambiguous holdings" to say as much. *Patterson*, 357 U. S., at 456. The closest example the Court offers is *State* v. *Valencia*, 241 Ariz. 206, 386 P. 3d 392 (2016), in which the Arizona Supreme Court

considered whether *Miller* v. *Alabama*, 567 U. S. 460 (2012), constituted a significant change in law. 241 Ariz., at 208, 386 P. 3d, at 394. The court observed that pre-*Miller*, "Arizona law" allowed trial courts to impose life sentences on juveniles "without distinguishing crimes that reflected 'irreparable corruption' rather than the 'transient immaturity of youth.'" *Valencia*, 241 Ariz., at 209, 386 P. 3d, at 395. *Miller*, in holding that trial courts must weigh such considerations before imposing a life sentence on juveniles, changed Eighth Amendment doctrine and therefore changed the law in Arizona. 241 Ariz., at 209, 386 P. 3d, at 395; see also *Montgomery* v. *Louisiana*, 577 U. S. 190, 208, 212 (2016). *Lynch*, by contrast, did not change the content of federal law and therefore did not change the law in Arizona.

If the Arizona Supreme Court's distinction between a change in law and a change in the application of law seems familiar, it should—federal habeas law draws the same line. Take everything about this case and transplant it to federal court: A federal defendant is wrongfully denied a *Simmons* instruction, the Court of Appeals's understanding of *Simmons* is later summarily reversed in *Lynch*, and the defendant (now a prisoner) then tries to obtain the benefit of *Lynch* through a successive or delayed motion for postconviction relief.* In this scenario, the federal prisoner faces the same dilemma that Cruz faces in Arizona. Pre-*Lynch*, the Court of Appeals was unreceptive to the *Simmons* claim. Post-*Lynch*, the prisoner's claim is procedurally barred: *Lynch* is not "a new rule of constitutional law" or a "newly recognized" right because it merely applies an old rule, *Simmons*. 28 U. S. C. §§ 2255(f)(3), (h)(2). If federal law limits a prisoner's *Simmons* claim to an initial, timely motion, we should not be surprised that Arizona has made a similar choice.

––––––––––

*This hypothetical is inapposite to Cruz's pending federal habeas action, which appears to be a timely, initial federal filing. See *Cruz* v. *Ryan*, 2018 WL 1524026, *3 (D Ariz., Mar. 28, 2018), appeal docketed *sub nom.* *Cruz* v. *Credio*, No. 21–99005 (CA9, Apr. 22, 2021).

And we have cautioned before that "[f]ederal habeas courts must not lightly 'disregard state procedural rules that are substantially similar to those to which we give full force in our own courts.'" *Johnson* v. *Lee*, 578 U. S. 605, 609 (2016) (*per curiam*) (quoting *Kindler*, 558 U. S., at 62).

The Court makes a case for why the Arizona Supreme Court's interpretation of its own precedent is wrong. If I were on the Arizona Supreme Court, I might agree. But that call is not within our bailiwick. Our job is to determine whether the Arizona Supreme Court's decision is defensible, and we owe the utmost deference to the state court in making that judgment. Cases of inadequacy are extremely rare, and this is not one. I respectfully dissent.

Page Proof Pending Publication

## Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None