# SUPREME COURT OF THE UNITED STATES

## LONNIE ALLEN BASSETT *v.* ARIZONA

ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME
COURT OF ARIZONA

No. 23–830.   Decided July 2, 2024

The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN and
JUSTICE JACKSON join, dissenting from the denial of certiorari.

"[M]andatory life-without-parole sentences for juveniles
violate the Eighth Amendment." *Miller* v. *Alabama*, 567
U. S. 460, 470 (2012). Sentencing courts therefore must
have "discretion to impose a lesser punishment" on children
who commit crimes before they turn 18. *Jones* v. *Mississippi*, 593 U. S. 98, 100 (2021). An Arizona court sentenced
Lonnie Allen Bassett to life without parole for a crime he
committed as a juvenile. At the time Bassett was sentenced, however, Arizona courts had no discretion to impose
parole-eligible sentences because the State had completely
abolished parole for people convicted of felonies.

The Arizona Supreme Court acknowledged that "Bassett
was actually ineligible for parole." *State ex rel. Mitchell* v.
*Cooper*, 256 Ariz. 1, \_\_\_, 535 P. 3d 3, 8 (2023). Arizona also
agrees that "parole-eligibility is constitutionally required,"
and that "Arizona law did not provide a parole eligible option at the time of Bassett's sentencing." Brief in Opposition 1, 24. Nevertheless, the Arizona Supreme Court denied Bassett's petition for postconviction relief.

This Court's precedents require a "discretionary sentencing procedure—where the sentencer can consider the defendant's youth and has discretion to impose a lesser sentence than life without parole." *Jones*, 593 U. S., at 112.
Because Arizona's sentencing scheme instead mandated

life without parole for juveniles, I would grant the petition for certiorari and summarily reverse the judgment below.

## I

In 2004, Lonnie Bassett shot and killed two people in Arizona when he was 16. He was riding in the back seat of a car driven by Frances Tapia when he used a shotgun to shoot Tapia and her boyfriend, who was sitting in the passenger seat.

Bassett was convicted of two counts of first-degree murder. At the time he was sentenced, defendants convicted of first-degree murder in Arizona received one of two sentences: either (1) "natural life," under which the defendant was "not eligible for commutation, parole, . . . or release from confinement on any basis;" or (2) "life," which required a defendant to serve 25 years before "releas[e] on any basis." Ariz. Rev. Stat. Ann., §13–703(A) (2003); see §§13–703.01(A), 13–1105(C). Arizona abolished parole for people with felony convictions in 1994, however, and that remained the law until 2014. See §41–1604.09(I) (1994); §13–716 (2014); §41–1604.09(I)(2) (1994). Therefore, for people with first-degree murder convictions, "the only 'release' available under Arizona law [wa]s executive clemency, not parole." *Cruz* v. *Arizona*, 598 U. S. 17, 23 (2023). Although Arizona's sentencing statute "continued to list two alternatives to death," *id.*, at 21, the "only alternative sentence to death was life imprisonment without parole," *Lynch* v. *Arizona*, 578 U. S. 613, 614 (2016) (*per curiam*); see also *Miller*, 567 U. S., at 486 (listing Arizona as one of "29 jurisdictions mandating life without parole for children").

Bassett was sentenced in 2006. The trial court sentenced him to one "natural life" sentence on one count and a consecutive "life" sentence on the other count. Because Bassett was sentenced between 1994 and 2014, the trial judge could sentence him only to life without parole.

## II

Life-without-parole sentences for juveniles are constitutional only for "those whose crimes reflect permanent incorrigibility" rather than "transient immaturity." *Montgomery* v. *Louisiana*, 577 U. S. 190, 209 (2016). Thus, "an individual who commits a homicide when he or she is under 18 may be sentenced to life without parole, but only if the sentence is not mandatory and the sentencer therefore has discretion to impose a lesser punishment." *Jones*, 593 U. S., at 100. This "discretionary sentencing procedure" is one "where the sentencer can consider the defendant's youth and has discretion to impose a lesser sentence than life without parole." *Id.*, at 112.

Discretionary sentencing schemes "ensure that life-without-parole sentences are imposed only in cases where that sentence is appropriate in light of the defendant's age." *Id.*, at 111–112. This constitutionally required sentencing scheme reflects the premise that, in deciding whether to impose life-without-parole for a juvenile, consideration of "youth" and "a child's capacity for change" matter. *Miller*, 567 U. S., at 473. This Court has reaffirmed that "*Miller* required a discretionary sentencing procedure." *Jones*, 593 U. S., at 110. Thus, "a State's discretionary sentencing system" is "constitutionally necessary." *Id.*, at 105.

## III

Arizona's sentencing scheme left no discretion for a parole-eligible sentence in this case. No one disputes that. See Brief in Opposition 1 ("Arizona law did not provide a parole-eligible option at the time of Bassett's sentencing in 2006"); 256 Ariz., at \_\_\_, 535 P. 3d, at 8 ("Bassett was actually ineligible for parole"). That is plainly inconsistent with *Miller*, *Montgomery*, and *Jones*. The State does "*not* argu[e] that the mere existence of its two sentencing options saves it from a *Miller* violation," and it agrees "parole-eligibility is constitutionally required." Brief in Opposition 22, 24.

Arizona advances three arguments for why Bassett did, in fact, receive all the discretionary process required by *Miller*. These arguments formed the basis for the Arizona Supreme Court's decision below.[1] Each runs contrary to *Miller*'s clear command.

First, the State contends that the sentencing court "was so mistaken about its own sentencing statutes that it fortuitously complied with *Miller*" because of a "widespread mistaken belief among Arizona judges and attorneys that the release-eligible option included parole eligibility." Brief in Opposition 3, 27. To start, Arizona eliminated parole more than a decade before Bassett was sentenced, and this argument is "inconsistent with the presumption that state courts know and follow the law." *Woodford* v. *Visciotti*, 537 U. S. 19, 24 (2002) (*per curiam*). Indeed, Arizona courts recognized that state law "eliminat[ed] the possibility of parole for crimes committed after [1993]," *State* v. *Rosario*, 195 Ariz. 264, 268, 987 P. 2d 226, 230 (App. 1999); and the State itself represented, in this Court and other courts, that state law made life without parole the minimum sentence. See Brief for State of Michigan et al. as *Amici Curiae* in *Miller* v. *Alabama*, O. T. 2011, No. 10–9646, etc., pp. i, 1; see also, *e.g.*, State Motion To Dismiss in *Chaparro* v. *Ryan*, No. 2:19–cv–00650 (D Ariz., Mar. 27, 2019), p. 3 (arguing that "Arizona statutory law at all relevant times unambiguously

——————

[1] The State does not argue, nor did the Arizona Supreme Court clearly hold, that executive clemency qualifies as the equivalent of a parole-eligible sentence under *Miller*. See Brief in Opposition 22–23 (conceding that "clemency-eligibility alone would have been insufficient"). That is for good reason. Executive clemency provides no "meaningful" or "realistic opportunity to obtain release." *Graham* v. *Florida*, 560 U. S. 48, 79, 82 (2010). Indeed, "*amici* who track clemency proceedings in Arizona are not aware of a single instance in which an individual convicted of first-degree murder since Arizona eliminated parole in 1994 has received a grant of executive clemency (*i.e.*, commutation of sentence or pardon)." Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* on Pet. for Cert. 8.

forbade parole to anyone convicted of first-degree murder after 1993"); Reply Brief 5–6 (collecting examples). This argument requires speculating, based on no evidence, about the possibility of a judge's two-decade-old mistaken belief about state law. *Miller* permits no such thing. Instead, as this Court has recently confirmed, "*Miller* required a discretionary sentencing procedure." *Jones*, 593 U. S., at 110. Here, it is undisputed that Arizona's sentencing regime required a sentence of life without parole at the time Bassett was sentenced.

Second, the State contends that Bassett did, in fact, receive "an individualized sentencing hearing at which his youth and attendant characteristics were considered" as mitigation evidence. Brief in Opposition 14; see also 245 Ariz., at \_\_\_–\_\_\_, 535 P. 3d, at 11–13 (noting that "Bassett's chronological age and attendant characteristics were considered"). That too misunderstands this Court's precedents. Sentencing courts must have the authority to actually "impose a lesser sentence than life without parole," not just the discretion to consider youth as a mitigating factor. *Jones*, 593 U. S., at 112. In other words, juvenile defendants can be sentenced to life without parole "only so long as the sentence is not mandatory—that is, only so long as the sentencer has discretion to 'consider the mitigating qualities of youth' and impose a lesser punishment." *Id.*, at 106 (quoting *Miller*, 567 U. S., at 476).

When a State offers no possible penalty other than life without parole, the sentence is unconstitutionally mandatory because consideration of age "could not change the sentence; whatever [is] said in mitigation, the mandatory life-without-parole prison term would kick in." *Id.*, at 488. Here, for example, although the judge mentioned Bassett's age as a mitigating factor, it is clear that the judge could not have considered how "the distinctive attributes of youth diminish the penological justifications for imposing the

harshest sentenc[e]" of life without parole.  *Id.*, at 472.  Because Bassett was sentenced well before *Miller*, the sentencing court could not have adequately considered Bassett's youth, his capacity for rehabilitation, or the necessity of a parole-eligible sentence.

"*Miller*'s discretionary sentencing procedure has resulted in numerous sentences less than life without parole for defendants who otherwise would have received mandatory life-without parole sentences."  *Jones*, 593 U. S., at 119.  That is because, "in concluding that a discretionary sentencing procedure would help make life-without-parole sentences relatively rare, the Court relied on data, not speculation."  *Id.*, at 112.  Arizona asks this Court to speculate that some consideration of age as a mitigating factor is sufficient to satisfy *Miller*, *Montgomery*, and *Jones*.  Perhaps Bassett would have received the same parole-ineligible sentences for the same reasons the sentencing judge already discussed; or perhaps Bassett's horrific childhood, including the fact that he was abandoned by his mother, kidnapped and abused by his father, and kept in a closet with just one meal a day, would have led to a parole-eligible sentence.  This Court should not speculate on this cold record, though, because "[d]etermining the proper sentence in such a case raises profound questions of morality and social policy" that are best left to "state sentencing judges and juries."  *Jones*, 593 U. S., at 119–120.  Instead, this Court's role is to ensure that the trial judge had "discretion to impose a lesser punishment in light of [Bassett's] youth."  *Id.*, at 120.

Third, the State contends that "the juveniles who received parole-eligible sentences will all receive parole eligibility within 25 years by virtue of the 2014 legislative fix," so the "functional outcome is no different than if parole-eligibility had been on the books all along."  Brief in Opposition 21; see also 256 Ariz., at \_\_\_–\_\_\_, 535 P. 3d, at 12–13.  That is wrong.  To start, the 2014 reinstatement of parole only applies to juveniles serving "life" sentences, not those

serving "natural life" sentences.[2]  So in this case, for example, it applies to only one of Bassett's two sentences.  See Brief for 15 Constitutional and Criminal Law Professors  as *Amici Curiae* on Pet. for Cert. 10 (Law Professors Brief) ("[T]he legislature did nothing to make individuals like Petitioner Bassett, who were sentenced to natural life with no possibility of release, parole-eligible").[3]

Moreover, the relevant question is the constitutionality of the sentencing scheme at the time of sentencing; and here the court lacked discretion to impose a sentence less than life without parole when it sentenced Bassett.  Courts generally have "no authority to leave in place a conviction or sentence that violates a substantive rule," and there is "no grandfather clause that permits States to enforce punishments the Constitution forbids." *Montgomery*, 577 U. S., at 203–204.  Therefore, "any post hoc revision to the sentencing scheme does nothing to alter the lack of discretion that judges faced when Petitioner Bassett and similarly situated defendants were sentenced.  Their sentences remain unconstitutional."  Law Professors Brief 10.  That is why this Court has already rejected the idea that "the potential for future 'legislative reform'" can rescue an unconstitutional sentencing scheme. *Lynch*, 578 U. S., at 616.

\*     \*     \*

In *Jones*, this Court assumed that "most offenders who could seek collateral review as a result of *Montgomery* have done so and, if eligible, have received new discretionary sentences under *Miller*." *Jones*, 593 U. S., at 111, n. 4.  That is simply not true in Arizona.  "Dozens of juvenile offenders in

---

[2] "[A] person who is sentenced to life imprisonment with the possibility of release after serving a minimum number of calendar years for an offense that was committed before the person attained eighteen years of age is eligible for parole on completion of service of the minimum sentence."  Ariz. Rev. Stat. Ann. §13–716 (2014).

[3] Arizona does "*not* argu[e] that the mere existence of its two sentencing options saves it from a *Miller* violation."  Brief in Opposition 22.

Arizona . . . were sentenced to life imprisonment without the opportunity for any type of release for crimes they committed as teenagers." Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* on Pet. for Cert. 3. *Miller* identified 28 States that had mandatory life-without-parole sentences for juveniles, including Arizona. Arizona "remains *the only one* of those states that has neither made individuals like Petitioner Bassett eligible for parole nor allowed them to be resentenced under a constitutional scheme." Law Professors Brief 18–19.[4] "Arizona thus remains the only state where juvenile homicide defendants are still serving unconstitutional sentences of mandatory life without parole with no meaningful mechanism to challenge their sentences." *Id.*, at 21.

Arizona now concedes that "[b]ut for the sentencer's actual consideration of parole-eligibility and the subsequent statute effectuating this sentence, there would be a *Miller* violation." Brief in Opposition 23. For the reasons discussed above, those two features do not save Arizona's scheme. Because the Arizona Supreme Court's decision departed from this Court's established precedents, I would grant the petition for certiorari and summarily reverse the judgment below.

I respectfully dissent.

—————

[4] "Following *Miller*, all other twenty-seven states called out in the decision have taken meaningful action to comply with federal constitutional law. Sixteen of those states have banned juvenile life without parole entirely. Six others have passed legislative reforms that remedy unconstitutional pre-*Miller* juvenile sentences. The remaining five states have addressed unconstitutional pre-*Miller* sentences via their state courts." Law Professors Brief 19–21 (footnotes omitted) (collecting cases).